## Montjoy v. Commonwealth.

(Decided Nov. 5, 1937.)

WM. E. WEHRMAN, JAMES L. MAGRISH, and CONRAD MAGRISH for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, and ULIE J. HOWARD for the Commonwealth.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, John (Pete) Montjoy, was indicted by the grand jury of Kenton county, in which he was charged with the crime of raping Mrs. Irene Cummings, whose husband was an employee of a railroad company in the operation of its trains. At his trial he was convicted, with the infliction of a death sentence as his punishment. He appealed to this court, and the judgment was affirmed in an opinion rendered in the case of Montjoy v. Commonwealth, 262 Ky. 426, 90 S. W. (2d) 362. A petition for rehearing was filed, which was orally argued in this court, but later overruled. Appellant then applied to the Supreme Court of the United States for an appeal, but his motion therefor was overruled by that court. 298 U. S. 646, 56 S. Ct. 961, 80 L. Ed. 1376. He then applied to the judge of the United States District Court for the Eastern District of Kentucky (the Hon. Church Ford) for a writ of habeas corpus, based upon practically, if not entirely, the same grounds as are herein urged against the judgment of conviction. His motion for the writ was overruled by that learned judge. Appellant then announced that he would appeal from that decision to the United States Circuit Court of Appeals for the Sixth Circuit, and the execution of his sentence was deferred until the time expired for taking that appeal, which he ultimately failed to do.

On January 20, 1937, and after all of the proceedings above enumerated, he filed in the Kenton circuit court, as the commencement of the instant proceedings, a unique pleading or paper styled ''Petition in Equity,''

in which he made as sole defendant the Commonwealth of Kentucky. In it he reiterated the defenses that he interposed at his original trial of the indictment against him, and filed as exhibits therewith an alphabetically designated list of documents which he alleges are affidavits of newly discovered witnesses, some of which are not sworn to at all, and others consist solely of letters written by the alleged discovered witnesses to an attorney, Mr. Alfred Bettman, First National Bank Building, Cincinnati, Ohio. The writers of the letters, so addressed to that attorney, indicate that they belonged to the medical profession. But whether or not they were in fact present practitioners, and, if so, in what branch of practice, is not disclosed by their letters to the attorney, or in any other manner at any place in the record. The commonwealth filed both a special and general demurrer to that pleading, and without waiving either it filed an answer in which every material affirmative allegation contained therein was specifically denied. The answer also contained a second paragraph setting up the various procedures taken by appellant in the case, as above enumerated, and in which it was insisted that appellant's conviction was not only pursuant to the regular prescribed rules of practice embodying due process of law, but, also, that his case had received much more than the usual attention at the hands of the various courts to which he made application. The court does not appear to have passed on either of the demurrers, but, on the contrary, struck or dismissed plaintiff's petition, from which order appellant prosecutes this appeal.

Counsel for appellant, therefore, is mistaken when they state in their briefs filed herein that the court sustained a demurrer to the pleading of their client, thereby admitting its statements as true. However, if that had been the procedure on this hearing by the trial court, it could not affect our disposition of the appeal in the manner hereinafter stated, since the application here made is based almost entirely upon alleged newly discovered evidence attempted to be manifested by the exhibits filed with appellant's pleading, plus an effort to procure a reconsideration of the question raised on the original trial, i. e., that negro jurors (to which race appellant belongs) were not permitted to serve on the jury, and which denial (as alleged) was of the nature and character involved in the case of Norris v. State

of Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074, and Patterson v. State of Alabama, 294 U. S. 600, 55 S. Ct. 575, 79 L. Ed. 1082. The latter contention was thoroughly gone into by this and the various federal courts to which appellant made application before the instant proceeding was inaugurated, and which question had become finally and effectually settled and determined. There is thus left for determination on this appeal only the question of alleged newly discovered evidence, and to which we will now devote our attention.

If that ground was available for the purpose invoked at the time employed (i. e., after the judgment of conviction had become final, as is true here) under any procedure or remedy known to the law, then it would be requisite that the one employing, and relying on it, to bring himself within the rule justifying his right to do so; i. e., that he had exercised due diligence to procure the alleged discovered testimony before his trial and was unable to do so.

The alleged newly discovered witnesses relied on resided in the immediate community where the crime was committed, although some of them resided in the city of Cincinnati, Ohio, just a short distance across the Ohio river from Covington, Ky., and the greater number of them appear to be at least acquaintances if not regular associates of appellant. But however that may be, it is not shown that any research of any kind was ever made by appellant or his attorneys to discover the testimony now relied on. Therefore, the record presents an inadequate showing of diligence on the part of their client and themselves to entitle appellant to the benefit of the alleged newly discovered testimony, even if it was sufficient to grant the relief sought herein if proper diligence had been exercised. But we are by no means convinced that such is the fact. The discovered testimony is directed to three propositions: (1) That appellant and his victim were personally acquainted with each other before the commission of the alleged offense, whereas it appeared at the trial that they were not; (2) that about four of the alleged discovered new witnesses (the testimony of two of whom appears in letters written by them as hereinbefore referred to) state that according to their opinion the offense could not have been committed as described at plaintiff's trial, i. e., by the parties standing; and (3) that a prosecuting witness (Black) who testified at appellant's trial had

retracted his testimony, as evidenced by his affidavit filed with the petition as one of its exhibits.

Our opinion in the 262 Kentucky, 90 S. W. (2d) Case, supra, sets forth the material facts appearing upon appellant's trial. It therein appears that the prosecuting witness Black, who it is claimed has now repudiated his testimony given on the trial, testified to the robbery of the prosecutrix by appellant before committing the offense for which he was convicted. In his affidavit filed with the petition, he continues to adhere to that testimony, and the only retraction made by him was, that he testified on the trial that appellant and the prosecutrix (at least so far as he knew) were unacquainted with each other, whereas in his affidavit he attempts to say that the statement so made by him at the trial was false. He attempts to state that such falsehood was sworn to by him because of threats and other unlawful pressure and acts of duress brought to bear upon him by different officers. However, if it should be established as an undenied fact that the prosecutrix and appellant were acquainted with each other before the commission of the crime for which the latter stands convicted, it would then have only a very remote, if any, bearing upon the case, since the only adverse conclusion that might be drawn from such fact would be that their acquaintance was of an intimate and undue nature, and immoral in character; but which no one claims or ever claimed throughout the prosecution. That statement applies to all of the other affidavits seeking to establish the fact of prior acquaintance.

The alleged discovered witnesses, who made affidavits as to their opinion concerning the impossibility of the crime being committed in the manner described, do not claim to be experts, and possibly their affidavits for that reason could not be considered for any purpose; whilst the letter writers to the same effect show no more competency for giving such testimony than do the affiants to such facts. Besides, all of such alleged testimony is strictly cumulative, since that question was thoroughly gone into upon the trial of the indictment against appellant, and it is not the policy or the rule, as hereinbefore declared by this court in many cases, to grant new trials for discovered cumulative evidence, unless it be of such a nature and character, or so overwhelming, as to render it probable that a different verdict would have been reached. We do not, however, find

it to be so in this case. We therefore conclude that it is most extremely doubtful that the alleged newly discovered evidence, if otherwise available, is sufficient, under thoroughly settled rules of practice, to grant the new trial contended for.

But, independently of all such considerations, this application was properly denied by the trial court for reasons announced in the two recent cases of Jones v. Commonwealth, one of which is reported in 269 Ky. 772, 108 S. W. (2d) 812, and the other one in the same volume of Kentucky Reports, page 779, and in 108 S. W. (2d) 816. The first one was an original proceeding filed in this court for a writ of habeas corpus by a convicted defendant (punished by death) after his conviction had been affirmed by this court, and a petition for rehearing had been overruled. The other one was an appeal from a ruling of the state circuit court that convicted him, upon an application made to it for a writ of coram nobis, and which application was grounded upon identical reasons urged by appellant in this application. We pointed out in that opinion that this court had determined in the cases of Wellington v. Com., 159 Ky. 462, 167 S. W. 427; Greer v. Com., 165 Ky. 715, 178 S. W. 1027, and Coldiron v. Com., 205 Ky. 729, 266 S. W. 374, that new trials, under sections 344 and 518 of our Civil Code of Practice, were not available to convicted defendants in criminal prosecutions. Therefore, this proceeding, if attempted to be based upon either of those sections, cannot be sustained under our ruling made in the cases referred to. We also held in the same Jones opinion that the ancient common-law writ of coram nobis had never been repealed in this jurisdiction so far as it was available in criminal prosecutions, since our holding in the cases referred to, supra, did not have that effect. We therefore determined in that (Jones) opinion that the writ was yet available where the facts, to remedy which it was originally promulgated, existed. It was pointed out in the same opinion that the writ was never available to make effective newly discovered testimony, or to relieve against perjury, but that the original purpose for its creation was to reach a situation whereby the defendant in a prosecution, though apparently given the forms of a trial according to law, had, nevertheless, received no trial at all, and which failure grew out of facts giving the appearance of a fair trial, but in truth and reality denying any such, and which situation

was brought about by duress, physical or otherwise, which the defendant on trial could not prevent, and to which he was forced to submit. Many authorities are cited in the Jones opinion, but the chief one in which the history of the writ was given (and its application extensively elaborated upon) was that of Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29, the opinion in which was written by Judge Byron K. Elliott, a most noted and pre-eminent judge. The reasoning employed by Judge Elliott in that opinion, as well as the conclusions he reached, are fortified by many other cases cited in the Jones opinion, and because of which we deem it unnecessary to repeat them here. We will, therefore, content ourselves with referring the reader to the indicated sources for that information.

We do not share the apparent enthusiasm of counsel in the innocence of their client, since the reading of the various records made by them in his behalf fail to disclose the extreme injustice that they insist has been meted out to him. They, however, have succeeded in procuring a more or less protracted postponement of the execution of the sentence pronounced upon their client by the misappropriation of unauthorized and unfounded procedures, followed by multiplied delays, all of which supply a useful purpose when properly employed; but it was never the purpose that they should be used as tools to create mere delay in the enforcement of duly rendered judgments. On the contrary, both the law and society that it serves require that there should be as speedy an end to litigation as is consistent with a fair and impartial hearing, and it would appear that in this case the time has been reached for the pronouncement of a finale to such unmeritorious and obstructive litigation.

For the reasons stated, the judgment is affirmed.