## Robertson v. Commonwealth.

Sept. 29, 1939.

J. S. Sandusky, Judge.

D. E. Wooldridge, Williams & Denny and Joe M. Jones for appellant.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Affirming.

Willie Robertson and Charlie Parker were jointly
indicted in the Rockcastle Circuit Court for armed rob-
bery. Robertson was tried separately, which trial re-
sulted in a conviction and his punishment was fixed at
twenty-one years in the penitentiary. On an appeal to
this court the judgment was affirmed as is shown in Rob-
ertson v. Com., 269 Ky. 317, 107 S. W. (2d) 292, and he
is now serving his sentence. The facts are fully set
out in that opinion and it is unnecessary to incorporate
them here. But we call attention to the fact that the
opinion shows Kenneth Mullens and Ernie Ponder were
also indicted for this same crime; that Mullens was
introduced as a witness for the Commonwealth and testi-
fied Robertson requested him to assist in the robbery
and that after the robbery asked him to swear that they
had slept together the night of the crime.

After the judgment against him was affirmed and
while serving his sentence in the penitentiary, Robert-
son filed his petition in equity in the Rockcastle Circuit
Court wherein he alleged he was not guilty of the crime
for which he was convicted and for which he was incar-
cerated; that at the time of his trial he did not know who
was guilty of the crime for which he was being tried;
that while he was in the penitentiary Charlie Parker
was tried during the August, 1937, term of the Rockcas-
tle Circuit Court which resulted in Parker's conviction
and in his being sentenced to twenty-one years' confine-
ment in the penitentiary; that soon after his conviction
Parker made a written confession, sworn to before a
notary public on August 23, 1939, that he (Parker),
Mullens and Ponder committed the crime, exonerating
Robertson from any connection therewith; that Mullens
on October 24, 1938, also made a written confession
sworn to before a notary that Robertson was innocent
of the charge and had no connection with the crime for
which he was convicted. Copies of the affidavits of
Parker and Mullens are filed with the petition which
alleges the original affidavits are on file in the office of
the Governor of Kentucky. The petition alleges that
the confessions of Parker and Mullens were the first
knowledge or information Robertson had of who com-
mitted the crime for which he was convicted, and that
neither of these confessions was available to him at the
time of his trial; that his conviction was the result of

the fraudulent conduct of Parker and Mullens in withholding their confessions.

Appellant's petition alleges Charlie Parker was called as a witness for him on his trial in the circuit court and that Parker refused to testify. The opinion of this court in that case does not show this fact, but it does show that the commonwealth attorney, who was called as a witness for Robertson, refused to testify. We have obtained the record in that case and we find Parker was not called as a witness for defendant, Robertson, but was used by the commonwealth in rebuttal. Parker testified that certain statements he made to the commonwealth's attorney that he (Parker) was connected with and assisted in this robbery were not true, and he made such statements "to help Willie Robertson out, not knowing what it would lead me to." Parker was not cross examined by Robertson's counsel. We presume counsel for the appellant, Robertson, in the instant case, did not have the record in the original case before them and the fact they had remembered someone had refused to testify in that case caused them to confuse Parker with the commonwealth attorney.

In the prayer of his petition Robertson asked the court before whom he was tried to grant him the writ of coram nobis "and or" the writ of audita querela against the Commonwealth of Kentucky and James Hammond, the warden of the Kentucky Reformatory, to show cause why he should not be given a new trial. Appellees filed a general demurrer to the petition, which was sustained by the court, and plaintiff declined to plead further, his petition was dismissed and he prosecutes this appeal.

We find the writ of coram nobis and the writ of audita querela thus defined by the text writers:

"At common law a writ of error coram nobis, or, as it is sometimes termed coram vobis, was one of the direct proceedings for setting aside a judgment. The unvarying test of the right to this writ was mistake or lack of knowledge of facts inhering in the judgment itself. It was available to obtain a review of a judgment by the court which entered it where it appeared that certain mistakes of fact had occurred which had not been put in issue or passed upon by the court, such as the death of a party, coverture, infancy, error in process, or mis-

take of the clerk, but errors of law were excluded from the causes on account of which the writ might issue." 15 R. C. L. 714, Section 166.

"At common law the writ of audita querela lay in behalf of a defendant in a judgment to be relieved from oppression of the plaintiff where matter of defense arose after the judgment, or was not available at the time of trial. The proceeding by writ of audita querela was regarded as a direct attack on the judgment in all cases to which it could be properly applied. It was in the nature of a bill in equity, and relief could not be obtained under it on account of errors of the court in matters of law or of fact, which might have been corrected by a writ of error in some appellate proceeding. This writ, like the writ of error coram nobis, has fallen into desuetude and has been generally replaced by motion to set aside a judgment, and by the use of bills in chancery, but in cases arising today upon motion which would formerly have been by audita querela it seems that the same mode of trial ought to prevail as prevailed at common law in such proceedings, namely by jury trial." 15 R. C. L. 715, Section 167.

See, also, 2 R. C. L. 305, Section 259; 2 R. C. L. 1159, Section 1; 7 C. J. S., Audita Querela, page 1278, Sections 1 to 3; 13 C. J. 1235; 6 C. J. 850, Sections 1 to 6.

We see but little distinction between the writ of coram nobis and that of audita querela. Judge Elliott, the distinguished jurist who wrote the leading case of Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29, had before him the writ of coram nobis, but a careful reading of that opinion will show he in effect granted the writ of audita querela. Sanders was indicted for the murder of his wife and when the case was called for trial an ominous mob surrounded the court house intent upon lynching the defendant. Under the duress of his counsel and the attaches of the court, if not of the trial judge himself, Sanders entered a plea of guilty without presenting his defense. The writ of coram nobis was granted not because of any mistake of fact but rather to relieve Sanders from duress and oppression, and to allow him to present a defense which was not available to him at the time of trial. As Judge Elliott made no distinction between the writs of coram nobis and audita querela, we will not attempt to do so here.

The learned chancellor denied the writs to Robertson on the ground that such writs had been superseded in Kentucky by Sections 271 and 273 of the Criminal Code of Practice. While we approve the conclusion he reached in denying the writs, we disagree with the chancellor that such writs have been superseded by any sections of the Criminal Code of Practice. In the case of Jones v. Com., 269 Ky. 779, 108 S. W. (2d) 816, 817, we wrote:

"We therefore conclude that the writ herein applied for [coram nobis] is available to appellant; provided his alleged facts bring the case within the purview of the common-law writ he invokes."

The pertinent facts in the Jones case are very similar to those in the case at bar. A little girl testified for the commonwealth she saw Jones shoot his wife, and there was another witness who gave damaging testimony against him. After Jones' conviction had been affirmed in this court he filed his petition for a writ of coram nobis directed to the judge who had presided at his trial. His petition recited the little girl and the other witness we referred to above who testified against him were not so situated that they could have seen the facts they testified to and that their testimony given at the trial was false. We refused to grant the writ in the Jones case and said:

"The annotation in 30 A. L. R. [1416] points out that the writ [coram nobis] will not lie where the judgment of conviction has been affirmed on appeal from the trial court, and the annotation in 33 A. L. R. [84] clearly demonstrates that the writ is not available because of prejured testimony heard at the trial, or because of newly discovered evidence made after the trial."

After his judgment of conviction in the circuit court had been affirmed on appeal here, Robertson is attempting to invoke the writs of coram nobis and audita querela on account of the alleged perjured testimony given by Mullens against him at the trial and on account of the alleged newly discovered evidence of Parker after the trial. We held in the Jones case, supra, that the writ of coram nobis was not available under such facts. As we make no distinction between that writ and the writ of audita querela, we are of the opinion that the

latter is not available to Robertson for the same reason that the writ of coram nobis was denied Jones.

The opinion in the Jones case is exhaustive and gives our reasons in full why the writ of coram nobis was denied and those reasons are supported by many authorities discussed and analyzed in that case. No purpose would be served in our again going at length into the question. Robertson's judgment of conviction was affirmed on his appeal to this court and the writs he is seeking are not available because of alleged perjured testimony heard on his trial, or because of alleged newly discovered testimony after his trial. His relief can only come through executive clemency and the courts are powerless to grant him a new trial.

On the authority of the Jones case, supra, the judgment of the chancellor sustaining the demurrer to appellant's petition seeking the writs of coram nobis and audita querela is affirmed.