## Anderson v. Buchanan et al.

Jan. 22, 1943.

812

Frank R. Cahill, Jr., and Rush Nicholson for appellant.

Hubert Meredith, Attorney General, Owen Keller, Assistant Attorney General, and James Park for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Robert H. Anderson was convicted of the murder of Marian Miley and sentenced to death. The judgment was affirmed. Anderson v. Commonwealth, 291 Ky. 727, 166 S. W. (2d) 30. Upon their separate trials, Tom Penney and Raymond S. Baxter were also sentenced to death for the same crime and the judgments were affirmed. Penney v. Commonwealth, 292 Ky. 192, 166 S. W. (2d) 18; Baxter v. Commonwealth, 292 Ky. 204, 166 S. W. (2d) 24. As disclosed in those opinions, the murder of Miss Miley and of her mother, Mrs. Elsie Miley, was committed in burglarizing the Lexington Country Club in the early morning of September 28, 1941. Under the statute and a reprieve of Anderson by the Governor, the penalties will be imposed on Friday, January 22, 1943.

Recently Anderson obtained the depositions of Penney and Baxter under an order of the Jefferson Circuit Court. Buchanan v. Anderson, 292 Ky. 813, 168 S. W. (2d) 48, decided today. He then filed a petition in equity, with appropriate motions, in the Fayette Circuit Court in which he was convicted, against the Warden of the Penitentiary, the Attorney General and the Commonwealth's Attorney of the judicial district, seeking (1) a new trial; (2) a writ of habeas corpus and discharge from custody; and (3) a writ of coram nobis against the defendants to show cause, if any they have, why the judgment of conviction should not be vacated.

The allegations are in substance that since the judgment was affirmed newly discovered evidence has become available, the effect of which is to exonerate the petitioner and establish that his conviction was upon false and perjured testimony. Some other allegations have been abandoned. A transcript of the depositions of Penney and Baxter were filed as part of the petition.

Penney was the principal witness against Anderson, as is shown in the opinion affirming his conviction. Whether other evidence would have been sufficient to convict him is problematical. In his deposition Penney retracts that testimony as it relates to Anderson and states that Anderson had nothing to do with the commission of the crime. He described the murder and his part in it substantially the same as he did on the trial, except that he now says he had taken and used Anderson's automobile that night without his knowledge or consent and had been joined by one Buford Stewart instead of by Anderson. He insists that he told the truth on the trial except that he had substituted Anderson in place of Stewart. He had done this because he believed Anderson had had him robbed of a cache of stolen whiskey which he had tried to sell Anderson, and that he had reported his automobile stolen and put the police on his trail resulting in his arrest in Fort Worth, Texas. He also deposes that he had not believed Anderson would be convicted of the crime since his would be the only testimony against him, and from long experience in his own criminal trials he knew that a man could not be convicted on the uncorroborated testimony of an accomplice. Penney further states that he is reconciled to his sentence of death, has given up hope of escaping it and wants to make a clean breast of the matter. It is disclosed that Stewart had

814

been killed several months before Penney first indicated his purpose to repudiate his involvement of Anderson, but Penney denies having then heard of that fact. Penney relates some occurrences and names certain persons who may be able to corroborate his story or who will establish it as untrue if opportunity be given for investigation. Baxter deposes substantially as he had testified on his own trial, that he was under the influence of liquor and marihuana and had little memory of what had occurred. However, he now declares he cannot say that it was Anderson who accompanied Penney that night.

The Circuit Court, following the decisions of this court, denied the petitioner any relief, except the issuance of a writ of habeas corpus conditionally. We have carefully re-examined the questions of law and for reasons stated are impelled to depart from previous rulings relating to the writ of coram nobis. Because of the short time before the date set for Anderson's execution, our decision has been heretofore announced and an order entered staying the execution until February 26, 1943.

■ The Legislature has made provision for the granting of a new trial of a civil action after final judgment and affirmance by the Court of Appeals by enacting Sec. 518 of the Civil Code of Practice, into which is brought the terms of Secs. 340 and 344. Among the grounds upon which such new trial may be granted are for fraud in obtaining the judgment and newly discovered evidence. But the Legislature has not made similar provision for a criminal prosecution. We have held consistently that the remedies provided for such a new trial of a civil action are not applicable to a conviction of crime, and that the provisions of Secs. 271 and 274 of the Criminal Code, prescribing rights and procedure to obtain a new trial in such a case, limit the power of the court to acting on an application filed at the same term at which the judgment was rendered, except upon a reversal by the Court of Appeals. Shepherd v. Commonwealth, 264 Ky. 235, 94 S. W. (2d) 606 Montjoy v. Commonwealth, 270 Ky. 470, 109 S. W. (2d) 1209.

■ The court sustained the motion of the respondents that before a writ of habeas corpus issue the petitioner be required to execute bond for $25,000, conditioned that he would "not escape by the way, and for the payment of such costs and charges as may be awarded against him," as provided by Sec. 404 of the Criminal Code of

Practice. The petitioner was not able to make the bond and no writ was issued. The question of attaching the condition is not a material consideration now in view of our decision in respect of the writ of coram nobis. But it may be pointed out that this court has consistently held to the opinion that habeas corpus is not an available remedy to obtain a new trial or release from custody except where it is shown that the judgment of conviction is void. It is not sufficient to establish that there was an error in the trial or some latent or hidden fact, such as undiscovered evidence or perjured testimony, which may result upon presentation in an acquittal. Smith v. Buchanan, 291 Ky. 44, 163 S. W. (2d) 5, 7; Sharpe v. Commonwealth, 292 Ky. 86, 165 S. W. (2d) 993. Elliott v. Com., 292 Ky. 614, 167 S. W. (2d) 703.

■ Apparently for the first time in this jurisdiction, less than six years ago, in Jones v. Commonwealth, 269 Ky. 779, 108 S. W. (2d) 816, a convicted defendant invoked the remedy of the ancient writ of error coram nobis to obtain a new trial after the doors of the courts of justice, conforming to the statutory and ordinary procedure, had been closed against him. We made reference to the history and purpose of that common law writ, which is to correct a final judgment by the same court in which it was rendered after the term had expired for errors of fact not attributable to the defendant's negligence, which it is presumed would not have been committed had the fact been disclosed. See also 37 Harvard Law Review; 3 Am. Jur., Appeal and Error, Sec. 1276; 31 Am. Jur., Judgments, 798, et seq.; 24 C. J. S. Criminal Law, section 1606. We held the procedure to be a part of the law of Kentucky and available in a proper case. Upon what seemed to us to be sound reasoning and sufficient authority, we ruled that it was not a proper process to obtain a new trial upon the ground of newly discovered evidence, embracing also the allegation of conviction upon perjured testimony, which was relied upon by Jones. We suggested his only relief was by Executive clemency. He then resorted to the Federal courts and claimed his rights under the Fourteenth Amendment to the Constitution of the United States relating to due process of law had been violated. The District Court heard testimony on the application of a writ of habeas corpus, stayed the

execution of the defendant and issued a certificate of probable cause to permit a decision by the Circuit Court of Appeals. Upon the evidence and the frank admission of the Attorney General of a doubt of the justice of the judgment of conviction, and the concession that the then Governor of the Commonwealth had publicly declared he would adhere to his pledge not to exercise the pardoning power, the court concluded:

"The appellant is not to be sacrificed upon the altar of a formal legalism too literally applied when those who from the beginning sought his life in effect confess error, when impairment of constitutional right may be perceived, and the door to clemency is closed." [97 F. (2d) 338].

The case was remanded to the District Court with instructions to discharge the defendant from custody without prejudice to the right of the Commonwealth to take further consistent proceedings. Jones v. Commonwealth, 6 Cir., 97 F. (2d) 335. We are informed he was never tried again. Parenthetically, it seems to us the Supreme Court does not go quite so far in its consideration as some of the language of the Circuit Court of Appeals would indicate the courts should go. The Supreme Court's view seems to be that alleged perjured testimony upon which conviction was had must have been by the active conduct or the connivance of the prosecuting officers. Mooney v. Holohan, 294 U. S. 103, 55 Sup. Ct. 340; 79 Law Ed. 791, 98 A. L. R. 406; Hysler v. Florida, 315 U. S. 411, 62 Sup. Ct. 688, 86 Law Ed. 932.

In Montjoy v. Commonwealth, 270 Ky. 470, 109 S. W. (2d) 1209; Robertson v. Commonwealth, 279 Ky. 762, 132 S. W. (2d) 69, and Sharpe v. Commonwealth, 284 Ky. 88, 143 S. W. (2d) 857, we adhered to the ruling that the writ of coram nobis is not available for relief upon the ground of newly discovered evidence or conviction upon perjured testimony. Sharpe resorted to the Federal court and had a hearing (Ex parte Sharpe, D. C., 36 F. Supp. 386) and an appeal; Sharpe v. Buchanan 6 Cir., 121 F. (2d) 448. But relief was denied him because he had not exhausted his remedies in the State court. He then filed a habeas corpus proceeding in the Lyon Circuit Court, within which jurisdiction the State penitentiary where he was confined is located. We adhered to our ruling that habeas corpus is available only for relief

from a void judgment for the reasons theretofore declared and because to hold otherwise would vest power in one circuit court to annul or refuse to give effect to a valid judgment of another circuit court. In the course of the opinion, Sharpe v. Commonwealth, 292 Ky. 86, 165 S. W. (2d) 993, 995 we said:

"If it be finally determined by the Federal Courts that due process of law demands that judicial process be available to one seeking relief on this ground, it seems advisable that judicial process other than habeas corpus be made available. With the solution of this problem we are not now immediately concerned."

While that case was pending, Sharpe filed a petition for certiorari in the Supreme Court of the United States. After our decision that court pointed out that the obstacle to a consideration of the merits of the petitioner's application which the Circuit Court of Appeals encountered had been removed, and ordered its judgment vacated, remanding the cause for such further proceedings as the court may deem appropriate. Sharpe v. Buchanan, Warden, — U. S. —, 63 Sup. Ct. 245.

In Smith v. Buchanan, supra, we overruled that part of the opinions in the Jones and Robertson cases which declared that the writ of coram nobis was not available after a judgment of conviction had been affirmed on appeal, and held the remedy to be available in the court rendering the judgment upon proper grounds.

These two later opinions indicate an appreciation of the fact that a situation has developed where one convicted of crime and sentenced to death has no remedy in the courts of Kentucky after expiration of the term of the court at which he was tried even though he can establish his innocence beyond a shadow of a doubt and the prosecuting officers concede that he was convicted upon perjured testimony or that evidence has been newly discovered and he should be exonerated. This is an abhorrent situation. A defendant so placed ought not to have to resort to the courts of the United States to obtain relief. We have been forcefully impressed by the recent opinion of the Supreme Court of the United States expressing its duty to entertain a petition crudely drawn and filed by the defendant himself asking a review of an order of the Supreme Court of Kansas which denied his

application for a writ of habeas corpus. State v. Pyle, 143 Kan. 772, 57 P. (2d) 93. The petition was construed as sufficient to reveal prima facie that the petitioner had been convicted of murder and robbery upon perjured testimony and the suppression of favorable evidence by the prosecuting officers. The court declared that his rights under the due process clause of the Federal Constitution had apparently been denied him and remanded the case to the State court for further proceedings. Pyle v. Kansas, 63 S. Ct. 177, 87 L. Ed. —.

The arm of justice in Kentucky ought not to be any weaker or shorter than it is in the Federal courts. Our State Constitution also insures every person a "remedy by due course of law" for an injury done him in his person. Sec. 14. And we have already recognized that the writ of coram nobis is a part of our "due course of law." As stated in Hysler v. Florida, supra:

"This common law writ, in its local adaptation, is Florida's response to the requirements of Mooney v. Holohan, 294 U. S. 103, for the judicial correction of a wrong committed in the administration of criminal justice and resulting in the deprivation of life or liberty without due process. See Lamb v. Florida, 91 Fla. 396, 107 So. 535; Skipper v. Schumacher, 124 Fla. 384, 169 So. 58; Jones v. Florida, 130 Fla. 645, 178 So. 404."

The Supreme Court held that "Such a state procedure of course meets the requirements of the Due Process Clause." The situation and conflict of authority have, therefore, demanded a reconsideration of our decisions. The appalling cruelty and atrocity of the murder of which the appellant and the other two men have been convicted and their sordid and vicious criminal records are indeed repulsive; but that cannot be permitted to deaden our sense of justice, administered without respect of persons.

We are deeply sensible of the need for ending litigation of every kind, particularly of criminal prosecutions, as early as is consistent with right, and that no one should be permitted to have de novo trial after trial ad infinitum; likewise, we realize that with little difficulty one whose life or liberty is at stake may fabricate evidence and call it newly discovered, or have a prosecuting witness repudiate his testimony and allege perjury in

order to obtain a new trial or perhaps only a reprieve. We recognize that it is a rule in several jurisdictions that a writ of coram nobis will not lie on the ground of newly discovered evidence or alleged false testimony. The reasons assigned for the rule are that the defendant might discover or fabricate evidence which would have been material on the trial and require the courts to try the whole case over again, thereby rendering the validity and stability of judgments too uncertain to comport with sound policy, public convenience and safety. 31 Am. Jur., Judgments, Sec. 804; Annotation 33 A. L. R. 84; 24 C. J. S. Criminal Law, Sec. 1606, p. 149. But in some of those jurisdictions the door has been left open if the evidence is of "such a conclusive nature as to demonstrate it to be impossible under all circumstances that the judgment was wrong upon the merits." Humphreys v. State, 129 Wash. 309, 224 P. 937, 940, 33 A. L. R., 78. The rule seems to be one of expediency and loses sight of the power of the courts to protect themselves against imposition. It seems to write in an unwarranted exception and to overlook the real purpose of the writ, which is to revest the court with jurisdiction in an extreme emergency and permit inquiry into the important question of whether the judgment of conviction should be vacated because the defendant was unknowingly deprived of a defense which would have probably disproved his guilt and prevented his conviction, and if that probability be established to grant the defendant a new trial of the accusation. 31 Am. Jur., Judgments, 812; 24 C. J. S., Criminal Law, Sec. 1606. An informative article appears in 37 Harvard Law Review, 744. After discussing the origin and growth of the writ of coram nobis, it is said:

"These extensions and modifications significantly show that the writ possesses germs of growth and flexibility sufficient to make it a valuable remedy in unusual situations. The running of the statutory period upon a motion to vacate judgment may in a particular instance work unmerited hardship from which the writ can afford relief. There may be a peculiar desirability that in some instances the truth of facts alleged to have existed at the time of trial be submitted to a jury. Bench and bar may properly regard this ancient writ not merely as a relic of antiquity, but as an emergency remedy which may still be found useful."

We, therefore, concur with the views of the Supreme Court of Indiana and its conclusion that the court in which a conviction was had has discretion to grant the writ where it appears that but for alleged false testimony or undiscovered evidence of such a conclusive character that the verdict most probably would not have been rendered and there is strong probability of a miscarriage of justice unless the process be granted. Davis v. State, 200 Ind. 88, 161 N. E. 375; George v. State, 211 Ind. 429, 6 N. E. (2d) 336. We affirm that it is not enough merely to show that a prosecuting witness has subsequently made contradictory statements or that he is willing to swear that his testimony upon the trial was false, for his later oath is no more binding than his former one. State v. Superior Court, 15 Wash. 339, 46 P. 339. See also Hysler v. Florida, supra. It may be otherwise if the sole witness repudiates his testimony. It is to be emphasized also that obtaining the writ is not a matter of right but the granting of it is a matter of sound judicial discretion to be exercised upon a showing of reasonable certainty. Elliott v. Com., supra; 24 C. J. S., Criminal Law, Sec. 1606, page 155; 31 Am. Jur., Judgments, Sec. 801; Ernst v. State, 179 Wis. 646, 192 N. W. 65, 30 A. L. R. 681; Chambers v. State, 117 Fla. 642, 158 So. 153.

The question of the guilt or innocence of the accused is not a necessary subject of the inquiry. The question embraces the genuineness and good faith of the repudiation or newly discovered evidence and the probability that the conviction would not have resulted if the truth had been revealed. Due diligence to discover the grounds before it was too late to be available under statutory processes is to be considered. Delay in seeking this extraordinary writ until the executioner is seen approaching is obviously a suspicious circumstance. It should always be made to appear with reasonable certainty that earlier action to secure relief and redress was not reasonably possible, or that there is an extreme exigency, before a stay of execution should be ordered.

Our previous opinions to the contrary are overruled. If the extension of the use of the common law remedy should bring about an unsatisfactory result, it is, of course, within the power of the legislature to correct it by providing appropriate remedial processes. It has made such provision in civil cases.

In the case at bar the trial court, following the de-

cisions of this court, as we have stated, in effect sustained a demurrer to the petition. We think that was a proper ruling except as to that part which sought a writ of coram nobis. As we have also said, the conviction of the petitioner, Anderson, was largely upon the testimony of Penney. Baxter did not testify on Anderson's trial. It seems to us that the petition, with the transcript of their depositions, discloses prima facie that there may have been a miscarriage of justice; at least they present allegations of circumstances, substantially supported, which justify further judicial inquiry. Upon a trial of the issues the court may conclude that the ends of justice do not require that the judgment of conviction be set aside and a new trial of the indictment ordered.

The judgment is, therefore, reversed and the case remanded for proceedings consistent with this opinion.

Whole Court sitting.

Judges Sims and Cammack dissenting.

Judge Sims dissenting.

The majority opinion is so divergent from my conception of the law that I feel impelled to dissent.

As far back as 1914, this court refused to apply Sections 344 and 518 of the Civil Code of Practice to criminal cases. As expressed in Wellington v. Com., 159 Ky. 462, 167 S. W. 427, 428, "It is contemplated by the law that criminal cases are to be speedily disposed of, and therefore the procedure prescribed by the Criminal Code [referring to Sections 271-274 previously mentioned in the opinion] for obtaining a new trial is the only one known to the law." Greer v. Com., 165 Ky. 715, 178 S. W. 1027 (delivered the next year) followed the Wellington opinion, quoted copiously therefrom and closed by saying that the pardoning power vested in the Governor was created to meet an emergency in criminal cases where subsequent events justified its exercise. The sentence above quoted from the Wellington opinion conclusively shows that it abolished the writ of coram nobis in this state, since under Section 233 of our Constitution only such common law exists in Kentucky as was in force in Virginia on June 1, 1792, which has not been modified by our Constitution, Legislature or judicial decisions, or is not repugnant to the public policy of Kentucky. Com. v. Donoghue, 250 Ky. 343, 63 S. W. (2d) 3, 89 A.

L. R. 819; Wilson v. Com., 290 Ky. 223, 160 S. W. (2d) 649.

The soundness of the Wellington and Greer opinions was never challenged until 1937 when the writ of coram nobis made its first appearance in our criminal jurisprudence in Jones v. Com., 269 Ky. 779, 108 S. W. (2d) 816. The Jones case did not overrule those opinions, but cited them with approval as holding that Sections 344 and 518 of the Civil Code of Practice had no application to criminal cases. However, it erroneously assumed that the writ had not been abolished by Sections 271-274, Criminal Code of Practice, as construed in the Wellington and Greer opinions. The opinion in Robertson v. Com., 279 Ky. 762, 132 S. W. (2d) 69, fell into the same mistake as did the Jones opinion.

Our decisions are in such confusion on the writ of coram nobis that no one can tell where we stand. In writing on the subject we have wobbled and bobbled like a lost raft at sea. But we are not alone, as other courts likewise seem to be without mast and compass when sailing this sea. Reference to the texts and reported decisions of foreign jurisdictions will show that other courts are in the same state of confusion. The writ of coram nobis appears to be the wild ass of the law which the courts cannot control. It was hoary with age and even obsolete in England before the time of Blackstone, and courts who attempt to deal with it "become lost in the mist and fog of the ancient common law." Mitchell v. State, 179 Miss. 814, 176 So. 743, 747, 121 A. L. R. 258.

In Jones v. Com., 269 Ky. 779, 108 S. W. (2d) 816, it was said the writ did not lie after the affirmance of a judgment of conviction, nor was it available because of perjured or newly discovered evidence after trial; that its purpose was to obtain a new trial because of conditions for which the applicant was not responsible and where the record appeared regular, but where subsequent facts rendered the original trial equivalent to none at all; and to enforce the judgment was analogous to taking life without due process of law. That opinion was based on right respectable authority and was followed in 1939 by Robertson v. Com., 279 Ky. 762, 132 S. W. (2d) 69. The opinion in Sharpe v. Com., 284 Ky. 88, 143 S. W. 857, decided in 1940, pointed out that it was the intention of the framers of the Criminal Code to terminate criminal trials by an affirmance in this court, because the

Criminal Code provided no further procedure, hence the writ did not lie on the ground of newly discovered evidence after the conviction had been affirmed. This Sharpe opinion was on the road back to Wellington v. Com., 159 Ky. 462, 167 S. W. 427, when along came Smith v. Buchanan, 291 Ky. 44, 163 S. W. (2d) 5, decided in 1942, and overruled so much of the Jones and Robertson opinions as held that the writ did not lie after judgment of conviction had been affirmed; but it did not mention the Sharpe opinion holding that the writ did not lie for newly discovered evidence after the conviction had been affirmed. However, there was another suit by Sharpe seeking a writ of habeas corpus. The judgment denying habeas corpus was affirmed in 292 Ky. 86, 165 S. W. (2d) 993, in which it was intimated that the first Sharpe opinion was erroneous in denying the application of coram nobis on newly discovered evidence after the judgment of conviction was affirmed. The present opinion of the Anderson case overrules the first Sharpe case.

The court in the majority opinion says it is "deeply sensible of the need for ending * * * criminal prosecutions, as early as it is consistent with right," yet it not only opens the door to indefinite delay, but actually invites it. Should the trial court upon hearing the petitioner's application overrule same, certainly he may prosecute an appeal to this court. Should the judgment be affirmed, he is entitled to file a petition for rehearing. If that be overruled, then there is nothing to prevent him within a few days before his execution from filing a second petition for a writ of coram nobis upon the ground of newly discovered evidence as to his whereabouts on the night of the murder, and attach thereto the deposition of a witness who has never testified previously, showing Anderson was not in Fayette County on the night of the murder. The trial court under the majority opinion must hear that application because of the "extreme emergency" and determine whether or not the petitioner "was unknowingly deprived of a defense which would have probably disproved his guilt and prevented his conviction." If it refuses to hear this second application for the writ, then the petitioner may appeal and this court under the opinion in the instant case would be compelled to reverse the judgment. Then would follow another hearing and subsequent appeal as above outlined. This procedure could be repeated almost indefinitely, because under the majority opinion failure to grant a hearing on

the application would deprive petitioner of due process of law under the Federal Constitution, Amend. 14, and the Federal Courts would release him upon a writ of habeas corpus.

Nor can I agree with the majority opinion that Penney's testimony is "of such a conclusive character that the verdict most probably would not have been rendered and there is a strong probability of a miscarriage of justice unless the process be granted." While the case should not now be considered on its merits for the purpose of this appeal, and I am not so doing, yet I must consider the original record as disclosed by the opinion concurred in by the whole Court. The pistol from which the bullet was fired was shown to belong to Anderson. Mrs. Gabbard identified him as the man who came to her place near Lexington, looking for Baxter on the fatal night. Givens, the drug clerk, identified Anderson as the man to whom he sold a flashlight around midnight on the 27th of September in Lexington. Frank Lederson testified that he saw Penny and Anderson in a Buick car which the latter was driving going east on Market Street in Louisville around 7:30 P. M. on the 27th. It is most significant that Anderson did not take the stand and deny any of this testimony, and my opinion is that it alone would have convicted him without the testimony of Penney. Then there is the very damaging evidence of the notes passed between Anderson and Penney referred to in the original opinion, and there is no explanation of who Hoffman was and why Anderson would wire him $15 when he was in Mississippi with Penney in Anderson's car.

Penney admits he was a "hi-jacker" of liquor, which translated into polite parlance means that he was an armed robber frequenting the highways and preying upon liquor shipments. It would appear that murdering women was just a sideline with him. When caught he was weak enough to incriminate his friend Anderson. After they were convicted Anderson filed this petition for a writ of coram nobis based upon Penny's repudiation of his testimony only to the extent that it was Buford Stewart, *now dead,* and not Anderson, who was with him. Everything he said was true when you substitute Stewart for Anderson, so he says. To my mind this proceeding is not unlike the ancient case of Everett v. Williams, 9 L. Q. B. 197, where a bill was filed by two highwaymen

to settle a partnership in outlawry, resulting in a judgment condemning the bill for scandal and inflicting the death penalty upon both litigants.

How this court can take seriously this petition is beyond my understanding. Anderson did not take the stand and deny a word of Penney's testimony, nor the other evidence referred to in the second preceding paragraph which was just as damaging as that of Penney. Nor can I see how a federal tribunal can say that Anderson has been deprived of his day in court after he had an orderly and fair trial and his case subsequently fully considered on appeal as is shown by the original opinion. His present petition is but a sham.

As was written in Mitchell v. State, 179 Miss. 814, 176 So. 743, 744, 121 A. L. R. 258:

"[Writs of coram nobis] have induced a course of practice in cases of death sentences which, under the experiences of the last few years, has become intolerable, and has produced such mischief as to bring the courts and the law into a measure of disrespect, in the hearing of numerous applications for the stay of executions and in the too frequent granting thereof."

I think we should return to the rule enunciated in Wellington v. Com., 159 Ky. 462, 167 S. W. 427, that the procedure prescribed by the Criminal Code of Practice for obtaining a new trial is the only one known to Kentucky criminal procedure. If this does not suffice, then let the Legislature remedy the situation; otherwise there are likely to be petitions for the writ of coram nobis followed by appeals in most instances where there is an affirmance of a death, or long term, penalty by this court. If there was ever a case where a hearing for the writ should be granted, I am confident it is not this one. I feel that the enforcement of the criminal law should not be brought into disrepute by granting Anderson a hearing for a writ of coram nobis.

We got along fairly well in Kentucky without this writ from 1792 until 1937—145 years—with no injustice to criminals and with federal jurisdiction being invoked by them in but few instances. But if continued in effect, the writ promises to make the judicial road rought in the future for everybody except the criminal.

Judge Cammack concurs in this dissent.