## Day v. Commonwealth et al.

Oct. 22, 1943.

As Modified on Denial of Rehearing.

Feb. 4, 1944.

Napier & Napier and C. W. Napier, Jr., for appellant.

Hubert Meredith, Attorney General, and Guy Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, Roscoe Day, was tried and convicted in the Leslie Circuit Court under the charge of wilfully and feloniously shooting into the residence of Henry Engel. His defense, was not guilty, and an attempt to prove an alibi, but the jury disregarded the testimony of himself and his witnesses and returned a verdict of guilty with a fixed punishment of confinement in the penitentiary for two years.

Appellant's motion for a new trial—which was overruled—relied chiefly on (1) alleged error of the court in overruling his motion for continuance because of the absence of witnesses, and (2) that the verdict was flagrantly against the evidence. An appeal was prayed by him to this court and granted, followed by preparation of the record by the clerk to be filed in this court; but counsel representing him failed to file it in this court within the time prescribed by law and failed to obtain additional time for that purpose. Never-

theless, counsel did file the record after the expiration of the time to perfect the appeal, followed by this court later dismissing it on motion of the Commonwealth, which order was made on December 15, 1942.

On February 18, 1943, appellant filed his petition in the Leslie Circuit Court, wherein he was convicted, against the Commonwealth, the clerk of the circuit court and the Sheriff of the county wherein he sought a new trial of the indictment against him under the common law writ of coram nobis and, incidental thereto, he prayed for a restraining order against the official defendants to prevent them from carrying into execution the judgment of conviction. The grounds for the relief sought were that appellant had been denied due process of law at his trial in that the officer to whom his subpoenas were issued had failed to serve them on some of his witnesses and that his evidence to establish his alibi was so overwhelming, as alleged, that a verdict contrary thereto likewise deprived him of his constitutional rights, thus rendering void his conviction. It was also alleged in the petition that since the trial plaintiff has discovered from interviews with Engel, whose house was shot into, that he, Engel, after investigations made by him, following appellant's conviction, had formed the opinion that defendant had not committed the offense with which he was charged; and Engel's affidavit went no further than to express his opinion without stating any later discovered evidence in substantiation thereof. The extraordinary writ of coram nobis is not invocable upon such a dubious foundation, since the suspicion would always exist of some incubative action inducing the witness, or affiant, to express his opinion bottomed on no probative fact whatever. Defendants demurred to the petition, which the courts sustained and plaintiff declining to plead further his petition was dismissed, from which this appeal is prosecuted.

We deem it unnecessary to enter into a detailed recitation of the testimony heard upon the trial of the indictment, except to state its substance, as given by the prosecuting witnesses, and by defendant and his witnesses. The shooting was on Sunday, February 15, 1942, somewhere near 4 o'clock p. m. Appellant and Engel were near neighbors and but a short distance from Engel's residence the father-in-law of plaintiff, a Mr. Minard, resided with his family. A majority of

the absent witnesses were members of the Minard family, one of whom, a daughter, married appellant. There were also three other persons present at the Minard residence and all of them—except some members of the Minard family—appear to have gathered there earlier in the day to listen to the radio with which Minard had equipped himself. Appellant, and another, went the distance of something like one-half mile to Engel's residence and bought from his wife a chicken to be prepared for dinner, which was done at the Minard residence and appellant testified that he and his wife remained there until between 5 and 6 o'clock, when they left for their home. He introduced some of the Minards who sustained him in that contention and he stated in his affidavit that the absent witnesses would likewise testify. However, one of the Minard witnesses testified that about twenty minutes after he heard the shooting towards Engel's residence he saw appellant on the road carrying a gun which witness said "was a big gun," although defendant had testified that he had no gun of any kind throughout that day.

Engel and his son and, perhaps, his wife testified that they saw appellant on the side of a hill across the creek from the Engel residence at the time of the shooting and he was located behind a stump when the gun fired but arose from his position afterwards so that witnesses saw and identified him. The court overruled the motion for a new trial because of the absence of witnesses, but permitted defendant to read his affidavit including, of course, what the absent witnesses would state if present; but he by his counsel contends in this action that the court erred in not requiring prosecuting counsel to admit the truth of the testimony of the absent witnesses as set out in appellant's affidavit and which contention is made under the provisions of section 189 of our Criminal Code of Practice. Formerly that section required the admission of the truth of the testimony of the absent witnesses as set out in the affidavit for continuance when the trial was had at the appearance term, but it was amended in 1920 by Chapter 57, page 244 of the Session Acts of that year so as to require the trial to proceed, but with the privilege of the defendant to read such statements as the testimony of the absent witnesses, though the trial was had at the appearance term. However, the amendment provided that "the court may, when, from the nature of

the case, it shall be of opinion that the ends of justice require it, grant a continuance, unless the attorney for the Commonwealth will admit the truth of the matter which it is alleged in the affidavit such absent witness or witnesses would testify to.'' The amendment, therefore, lodged in the trial court a discretion as to whether a continuance would be granted, unless the Commonwealth admitted the truth of what the absent witnesses would testify as developed by the affidavit of defendant, or whether such statements should be read as only the testimony of the absent witnesses. In cases cited to the notes to that section it was held by us that the discretion thus lodged in the court could not be disturbed on appeal unless it was flagrantly abused, and in any event the abuse, if any, would constitute only an error to be corrected through and by appeal, but in no event would it render the judgment of conviction void or violate any constitutional rights of defendant.

In the very late case of Toler v. Comm., 295 Ky. 105, 173 S. W. (2d) 822, decided June 18, 1943, the precise question was presented to us. It was there contended, as here, that the defendant there had been deprived of his constitutional rights in not obtaining the presence of his witnesses at the appearance term, and that the court abused a sound discretion in forcing him to trial without requiring the statements of the absent witnesses to be admitted as true, as is also contended here. But even on that direct appeal we overruled that contention and affirmed the judgment of conviction.

Independently of such directly applicable precedents we have held in a vast number of cases that it is not the number of contradicting witnesses that determines whether or not a verdict is flagrantly against the evidence, but that the jury trying the case is also possessed with the discretion to believe one set of witnesses testifying in the case in preference to another set, although one set may numerically exceed the number of the other one giving contrary testimony.

In this case appellant through his employed counsel failed to perfect his appeal from the judgment convicting him which rendered the judgment of conviction final. We exceedingly doubt (although the question may not be determinable in this case) if the judgment of conviction under our former ruling would have been re-

versed had the appeal been properly practiced so as to entitle us to review it. That being true, we will now proceed to determine whether a review of the judgment may be had in this character of proceedings which, as said, is an independent application for a writ of coram nobis.

The ancient writ, which we have held is a part of the common law of this jurisdiction, is employed most generally to correct an error going to the very vitals of the validity of the judgment, and which lurks only in the record, but does not expressly appear from it, the effect of which would be a practical denial of justice unless corrected. In its essence the relief sought by the employment of the writ is a new trial because of facts, later discovered, but unknown at the time of the trial—and as a consequence not appearing in the record of it—or facts which happened and came into existence following the trial, and where such later discovered existing facts, or later developed ones, in conjunction with those appearing at the trial, clearly and convincingly demonstrate that there had been a miscarriage of justice. Such description of the office and purpose of the writ—and where and when applicable—is stated in the text of 31 Am. Jur. pages 321 to, and including, 325, sections 798—806, which is substantially the same as is contained in the text of other authorities dealing with the same question. But all of them say, as well as our opinions post, that the writ may not be invoked to take the place of an appeal when the errors relied on appeared and were developed in the record of the trial.

The time for its employment is, after the judgment of conviction has become final with no other remedy available. Many states have enacted statutes granting the same or similar relief and in which it is held by the courts thereof that such statutory provisions take the place of and, in effect, repeals the common law writ. In recent years we have had occasion to review the office of such a writ, the circumstances under which it might be invoked, and the conditions generally under which a convicted defendant might avail himself of it. The recent cases in which it was done by us are, Jones v. Comm., 269 Ky. 772, 108 S. W. (2d) 812; same styled case, 269 Ky. 779, 108 S. W. (2d) 816; Robertson v. Comm., 279 Ky. 762, 132 S. W. (2d) 69; Sharpe v. Comm., 284 Ky. 88, 143 S. W. (2d) 857; Elliott v. Comm., 292 Ky. 614, 167 S. W. (2d) 703 and Anderson

v. Buchanan, 292 Ky. 810, 168 S. W. (2d) 48. In the latter Jones case (269 Ky. 779, 108 S. W. (2d) 816) we held, under authorities therein cited, that the writ would never lie because of newly discovered witnesses, but in the later cases, supra, that holding was overruled followed by the modification that in extreme cases of newly discovered evidence after the convicting judgment became final, would authorize and sustain a writ of coram nobis for the purpose of obtaining a new trial based on such ground. But we have never decided—nor have we been able to find a case decided by any other court—that the writ was available to correct an alleged abuse of discretion of either a jury or a court in determining the weight to be attributed to the evidence of the witnesses, and which is the only ground urged in this case in support of the adopted proceeding, which if sustained would, in all respects, be tantamount to an appeal of which plaintiff here failed to avail himself. We therefore, conclude that in as much as the petition disclosed all of the material facts the court properly sustained the demurrer filed thereto.

Wherefore, the judgment is affirmed.