## Jones et al. v. Commonwealth.

May 3, 1949.

Rodes K. Myers and Joe S. Garman for appellants.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellants, indicted for theft of an automobile, were jointly tried, the jury returning a verdict of guilty, fixing the penalty of each at two years' imprisonment. They are seeking reversal of the judgment on the grounds that:

(1) The court erroneously refused to continue the case, and to allow the reading of a supporting affidavit. (2) Erroneously denied a continuance on the ground that some of the jurors had heard another trial of defendants at the same term on a similar charge. (3) Refused to sustain challenges to six jurors who had served on the trial of a similar indictment during the same term. (4) Overruled motion for a directed not guilty verdict at the close of Commonwealth's and all evidence.

Taking up ground (1), we find that upon calling of the case two affidavits were filed, one by Jones stating that the trial came as a surprise, since the prosecuting witness had not previously appeared in court, either at examining trial or before the grand jury, and had not

been found by the sheriff until "some hours" before the case was called; that had they known Turner would be present they would have had several witnesses to testify in their behalf, and that because of the brief interval of time between his appearance and the calling of the case they lacked sufficient time for procurement of witnesses.

The indictment was returned in April; the case called for trial in September following, giving appellants more than four months for preparation. Aside from this, the affidavit does not show what witnesses defendants could or might have produced if given more time, or the substance of their testimony. This ground is novel and we are pointed to no authority nor have we found any that treats of the element of surprise by failure to assure the accused that a prosecuting witness will be present to testify.

The Thomas affidavit stated that if Hubert Harrison were present he would testify that the "automobile testified to by the two defendants" was his car, and that he had given Thomas permission to use it. The automobile was a 1936 Ford V-8, black in color with a broken fog light. This affidavit failed to meet many requirements necessary to give it efficacy. There was no showing of diligence; no reason shown why Harrison's presence could not have been procured. There was no allegation that Harrison's evidence was material or that he was within the court's jurisdiction. Fowler v. Commonwealth, 260 Ky. 433, 86 S. W. 2d 148.

It is complained that the court declined to allow counsel to read the Thomas affidavit to the jury. Counsel states that when appellants offered to read the affidavit the court denied that right, and refers to transcript of evidence, page 22. When we turn to that page we find the following notation: "Motion and affidavit prepared by counsel for defendants is overruled, counsel for defendants except." This complaint was not set up in motion for new trial unless embraced in No. 6, "the court erred in rejecting competent evidence offered by defendants." However, the bill of exceptions contains this statement, "The court denied during the progress of the trial the reading of" said affidavit, "to which ruling the defendants except."

Section 189 of the Criminal Code of Practice provides in substance that when the defendant offers an affidavit in support of motion for continuance, the affidavit may be read for what it is worth, to avoid continuance, and may in the end of justice allow the affidavit to be taken as true. However, we wrote in Miller v. Commonwealth, 200 Ky. 435, 255 S. W. 96, 97, "a judgment of conviction will not be reversed for refusing a continuance, unless from all the facts and circumstances of the case it manifestly appears that defendant's substantial rights were prejudiced thereby." The testimony of Harrison would be cumulative at the most, and the affidavit, if ever offered to be read, was so defective the court did not err in refusing it. Walker v. Commonwealth, 216 Ky. 26, 287 S. W. 20; Day v. Commonwealth, 296 Ky. 483, 177 S. W. 2d 391.

This brings us to the contention that the court should have sustained challenges to the jury on the ground of implied bias because six jurors who had "served in a similar indictment, on which offense the appellants were acquitted." The record fails to show challenge because of implied bias, or on any ground. In the motion for new trial it is stated that the court overruled a motion to dismiss the panel on the ground of implied or actual bias, Sec. 210, Criminal Code of Practice, because six of the jurors selected in the instant trial had served as jurors on the trial of the two defendants on two other indictments charging them with grand larceny at the same term, acquittals resulting in both trials. The record does not show a challenge to any juror, to the panel, or motion to dismiss. The record shows that the case was called for trial, motion made for continuance and overruled. Then follows the trial order, which recited: "Came defendants (naming them) and by counsel waiving formal arrangement, then came the following jury * * * who were duly sworn, etc." If any challenge to the jury, or to any jurors, it must have been made after the swearing of the jury, but as said we fail to find challenge in any form or a ruling of the court thereon. We find no error in respect to the formation of the jury. Aside from this we are of the opinion that Sec. 210 of the Criminal Code of Practice, and its subsections, do not apply to the situation here presented.

This brings us to the contention that the court erroneously overruled appellants' motion for favorable directed verdict, and a conclusion necessitates a brief summary of the evidence. Turner, chief prosecuting witness, testified that in February 1947 he owned a two-door 1935 Ford V 8, black in color, equipped with fog lights. On a Saturday night in February 1947, he and members of his family drove into Bowling Green. He stopped in a store and purchased two wash pans; took them to his car and parked at 8th and College Streets, then with his family went to a picture show, leaving the show about 8:00 p. m. They then went to the point where he had parked his car, and it was gone. He notified police officers, but heard nothing about the car until two weeks later when he was informed that Glasgow officers had an abandoned car in their custody. He went to Glasgow, identified the car. and it was released to him. The two pans were in the car, and a fog light had been broken off.

Jim Ritchie testified that on a Saturday night in February, about 10:30 the two defendants, whom he had seen "lots of times," came to his home and said they were out there in the ditch, and asked, "Have you got a crank?" He replied in the affirmative, but doubted whether it would fit. "They said, 'yes it is a 35.'" The Thomas affidavit described a '36 Model. He loaned them the crank and they returned with it and said they couldn't get it started. He then went with them, taking his car and pulled the ditched car out, and in doing so broke one of the fog lights off, which he put in the car and they drove off. He said he asked them whose car it was and Thomas answered that it belonged to his sister's husband. He described the car as a two-door, black 1935 Ford V 8. He said that on the following Monday on his way to Glasgow he saw the same car on the side of the road, about a mile from his home. He recognized it by the absence of the fog light, and looked in and saw the broken fog light and two washpans. He identified the defendants as the same boys whom he had assisted.

The sheriff of Barren County testified that an abandoned car "showed up" in Barren County, and was reported to his office and he had it brought in and

began investigation and found that it "belonged to Tommie Turner" and Turner was notified. He described the car just as other witnesses had described it. Turner came to Glasgow, identified the car and it was released to him; he said that the Warren County registration of this car was in Turner's name.

In defense Thomas testified, first denying that he had any part in taking Turner's car. He did say that he had asked Ritchie to help get a car out of the ditch, but that it belonged to Hubert Harrison. He says the car was not abandoned but he drove it home to Harrison, who then lived at Thomas' home. He said that he was not in Bowling Green on the night in question, in the car which Jones was driving; that they had broken one fog light on the drive that night, and there were no tin pans in it. On cross-examination he said he put the broken fog light in the car. He did not know the license number of Harrison's car, but said it was a Barren County license. He said Boone borrowed the car to drive to Glasgow to meet his, Boone's brother.

Jones testified that he was driving Harrison's car on the Saturday night when Ritchie gave assistance. In all respects his testimony was the same as given by Thomas. One other witness was brought forward by defendants; he testified that he knew Harrison, and that he owned an automobile, but he only knew that it was a "black one," and did not know the make or model.

Thus we have a case where the testimony is in conflict. If defendants were actually driving a car at the time in question which had been loaned to them by Harrison, and the jury accepted this proof as true, they should have been acquitted. However, the testimony of Ritchie was sufficient to show, or to convince the jury that the car which they were driving was the Turner car. This evidence, with the evidence of Turner and the sheriff, made the decision of guilt or innocence one for the jury rather than for the trial judge.

A careful reading of the whole record leads us to the conclusion that appellants have not pointed out any error which deprived them of their substantive rights.

Judgment affirmed.