The State v. Ray.

No. 23,907.

THE STATE OF KANSAS, *Appellee,* v. ORAL A. RAY, *Appellant.*

SYLLABUS BY THE COURT.

1. CORAM NOBIS—*Life Imprisonment—Written Confession Claimed to Have Been·Procured by Beatings and Threat of Mob Violence—Issue Tried to Jury—Competent Evidence to Negative Defendant's Affidavit.* In a proceeding *coram nobis* brought by one who had been sentenced to imprisonment for life on the charge of murder in the first degree, it was claimed that he had been induced to sign a written confession and enter a plea of guilty by reason of beatings administered to him at the hands of police officers and by threats inducing him to fear mob violence. *Held,* that the testimony of the district judge or of any person who was present at the time the confession was prepared and signed, or when the plea of guilty was entered, was competent to negative the statements in the affidavit for the writ.

2. SAME—*Evidence—Inconsistent Statements of Petitioner.* It was not error to admit in evidence statements made by the petitioner at the time of his arrest, which were inconsistent with statements made in his affidavit for the writ.

3. SAME—*Instructions Relative to Issues to be Tried and Determined by Jury in This Proceeding Proper.* Instructions charging that the evidence regarding the question of his guilt or innocence of the crime charged had been admitted only in so far as it related to the issues in this proceeding, and could not be considered by the jury for any other purpose; that the burden of proof was upon the petitioner;‚and that if the jury found from the evidence that the plea of guilty was freely and voluntarily made because of the fact of appellant's guilt and not because of undue influence, duress, assaults or threats, then the proceeding before the district court at the time the petitioner was sentenced was correct and orderly, are held proper instructions.

4. SAME. Instructions to the effect that on the face of the record the proceedings were regular, and that the burden of proof rested upon the petitioner, held proper.

5. SAME—*Petitioner's Testimony.* An instruction that the petitioner was a competent witness, and the jury must consider his testimony, but could take into consideration, as affecting his credibility, his interest in the result of the proceeding is held not to have been prejudicial.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed May 6, 1922. Affirmed.

*Walter L. Bullock,* of Dodge City, *George A. Jeffrey,* and *Charles B. Hudson,* both of Wichita, for the appellant.

*Richard J. Hopkins,* attorney-general, *James A. Conly,* county attorney, *I. N. Williams,* and *S. L. Foulston,* deputy county attorneys, for the appellee.

The State v. Ray.

The opinion of the court was delivered by

PORTER, J.: The proceeding is brought under the writ of *coram nobis,* which is in the nature of a civil action.

The appellant, on the 23d of May, 1918, pleaded guilty in the district court of Sedgwick county to the murder of Clarence LeClerc, and was sentenced to imprisonment in the state penitentiary for life.

On May 18, the body of Clarence LeClerc, with three bullet holes in it, was found in an orchard a few miles from Wichita. The automobile which he had been driving was gone and the next day the appellant was found at Pratt in possession of the car, which had been repainted. The appellant was brought to Wichita, and on the 21st of May signed a confession, in substance as follows: He came to Wichita May 17, from Oklahoma on his way to his home at Ford, Kan.; he stayed in Wichita that night and the next morning went to the garage of the Herman Motor Car Company and asked if they had any used cars for sale; talked to a man who took him in an automobile and demonstrated it; finally began to talk about a Jackson "8" which was painted blue. The man said, "Get in and we will take a ride"; after driving around they came back to the garage and appellant said he could not buy such a car but might trade some oil stock on it, and the salesman said, "Get in and let us ride some more and we can talk about it." When they reached the Thomas orchard, appellant pointed a revolver at LeClerc, told him to stop the car and to get out; held the gun on him all the time; when they got into the orchard appellant shot him three times, twice in the back and once in the head; before the shooting LeClerc told him if he wanted the car to take it and go with it but not to kill him. After killing LeClerc he got into the car and drove back to Wichita, got gasoline, bought a quart of green paint and a brush, drove out into the country, painted the automobile, then drove west and later was arrested at Pratt. The confession was signed and sworn to before a notary public. After having been confined in the state penitentiary for three years he filed in the district court a motion for the writ of *coram nobis,* supported by an affidavit alleging that he made the confession and entered the plea of guilty by reason of beatings administered to him at the hands of officers and through fear of mob violence.

The issues raised by the writ was tried by a jury, resulting in a verdict against the appellant and in favor of the state. His motion

for a new trial was overruled, and he has brought the case here for review, alleging errors in the admission of testimony and in the instructions to the jury.

On the trial of this proceeding the appellant testified that after he had been placed in jail the chief of police asked him to confess. His Bertillon measurement was taken and he was photographed and then taken to the undertaker's room where the body of LeClerc was. While viewing it the chief said, "You are a brute, you are not human." He was taken to the Thomas orchard with two carloads of officers; an officer swore at him and said, "You know you done this, and I ought to knock your brains out right here." He was taken back to the city jail. On Monday night two men came in; they wanted a confession; they said to him, "You just as well confess to this, and save trouble." He told them he had nothing to confess and they "cussed" him and said if he didn't they would beat his brains out, and they struck him with a black jack and knocked him back on the bed. He testified: "Afterwards they came back and this big fellow, he says, 'You have got to confess to this,' and mashed me over the head and knocked me to the floor, put his heel on my neck; slipped down off my skull on my neck, mashed my face into the gravel, skinned my face up; also cut a place on each side of my neck with his heel and hit me in the sides when I hollered." After they had kicked him to keep him from "hollering," they picked him up and laid him on the bed, and told him if he would confess and come right down there they would see he got out in a few minutes; he thought they were telling the truth and that was the reason he made the confession; after promising to sign a confession, he was not further molested. The next morning he was taken before the chief, who said to him, "Now I am going to give you all the chance in the world, but, you know you done this." He further testified: "I told him that I didn't know that I had done it; positive that I didn't do it, but I said, 'I have got to confess, I guess, you people are going to kill me if I don't.'"

His father-in-law testified that on the 23d day of May he came to Wichita with his daughter, wife of the appellant, and witness said to the chief of police, "You have not treated us people right in this case, you never let us know anything of this case." He replied: "I even treated you better than right, if I had not got this confession out of Ray, he would have been killed. There was a mob." When witness saw the appellant he could hardly recognize him; his face

The State v. Ray.

was swollen; he could not talk; there was a blow on his head, a cut place; the back of his head was swollen. The witness didn't learn when the trial would be held. About one week later he learned that the appellant had been sentenced.

The wife and her brother testified that appellant's eyes were swollen; that he had a dent on the right side of his head back of the ear, and that "he was almost beaten to death." Appellant's wife further testified that the chief of police told her she was lucky to have a husband alive, and that if they had not made him confess they would have sent him home in a box; that a mob threatened to hang and kill him. She also said that the reason she did not employ a lawyer at that time was because the appellant feared to have her do that.

The judge of the district court testified that when the appellant was arraigned and asked what plea he wished to enter he said that he wanted to plead guilty. The judge asked him if he desired an attorney and he replied something to this effect, "What is the use of having an attorney?" Mr. Foulston, who was city attorney at the time, testified that he dictated the statement as made to him by the appellant to a stenographer who transcribed it on the typewriter.

The chief of police denied that he had ever said to Mrs. Ray or the defendant that a mob was being formed, or that Ray had better plead guilty; that he did not threaten the family of the defendant, and did not inflict any punishment on the defendant, and had no knowledge of its being done.

One of the police officers in charge of the jail testified that on Sunday afternoon the officers were attracted to the jail below by noise and pounding; that he went down to find out what it was and found Ray beating his head against his bed and against the bars of his cell.

The appellant on his cross-examination was asked if it was not true that when the chief of police first inquired about the killing he told the chief he didn't know anything about it. His answer was, "Yes."

"Q. You did know about it didn't you? A. No."

His attention was then directed to his affidavit in this case and the following questions were asked:

"Q. You did know about it, didn't you? A. I did.

"Q. And you told him you didn't know anything about it? A. I told him I didn't."

The following portion of his affidavit was then read to him:

"On the 17th day of May, 1918, I came from Arkansas City to Wichita, Kansas, on the train, coming into Wichita I met a man who I afterwards learned was R. C. Miller. The next morning I went to a garage where second-hand automobiles were kept for sale and was taken out in a Jackson car by a salesman named C. LeClerc. As we were driving away from the garage this man Miller stepped up and got in and rode; we drove across the river over to the Hoover orchard where Miller told LeClerc to get out of the car and they walked back a few feet in the orchard where Miller shot LeClerc. I started to drive away, but Miller stopped me and said 'I don't want to hurt you; I will give you a chance to make some money. I have wanted this fellow for some time and if you do not do as I bid you, I will do the same for you.'

"Q. Was that true? A. Yes, sir."

The main contention is that the court permitted the original charge of murder to be investigated and tried out before the jury to the prejudice of the appellant. On the other hand the state contends that only so much of the facts were investigated as tended to show that the appellant had told different stories under oath concerning his knowledge of the crime and his participation in it. In his affidavit in this case he had sworn that he had seen a man named Miller shoot LeClerc. The affidavit was part of the application for the writ, and it was competent to introduce it in evidence and to cross-examine the appellant for the purpose of showing his inconsistent statements.

The testimony of the district judge before whom appellant entered his plea of guilty was competent, as was that of the city attorney who dictated to the stenographer the confession from statements made by the appellant. The testimony of any person who was present at the time the confession was prepared and signed, or when the plea was entered, was competent to negative the statements in appellant's affidavit. The same thing is true of the testimony of the officers who arrested appellant at Pratt. The appellant states in his affidavit that he took the car from Wichita and drove to Pratt under compulsion of another man, who, he says, committed the murder. It was proper to show that when he was arrested he stated that he bought the car at another place and had not been in Wichita for several months.

Complaint is made because the state was permitted to show the regularity of the proceedings in the district court at the time Ray was sentenced, and it is insisted that an issue was thus raised which should have been left to the jury because it was a question of fact.

The State v. Ray.

There was no claim in the affidavit for the writ that anything occurred in the court room at the time the plea of guilty was entered which was irregular.

We find nothing substantial in the objections to the testimony of LeClerc's employer and of other witnesses who told of the number of persons they saw in the car when LeClerc drove away with it, or when near the Thomas orchard. In any event none of this testimony can be said to have been prejudicial. The court carefully protected appellant's rights and instructed that evidence regarding the question of his guilt or innocence had been permitted only in so far as it related to the issues in this proceeding, and could not be considered by the jury for any other purpose, and that the only purpose of the writ was to restore to appellant his rights which existed prior to the plea of guilty, and that in the event this relief should be granted him he would then be placed on trial upon the charge of murder. The instructions, after stating what the record of the court show, properly charged that if the jury found from the evidence that the plea of guilty was freely and voluntarily made because of the fact of appellant's guilt, and not because of undue influence, duress, assaults or threats, then the proceeding before the district court on May 23, 1918, was correct and orderly, and the defendant was not deprived of any of his rights by the court.

It is complained that it was error to instruct that upon appellant's announcement of his desire to plead guilty, the district court was not compelled to cause a trial to be had, nor was it necessary that counsel be appointed to defend him. This was no more than an instruction that on the face of the record the proceedings were regular, and the court properly instructed that the burden of proof rested upon the appellant to establish that his confession and plea of guilty had been obtained by threats of bodily harm and under duress as charged in his affidavit.

Complaint is made of the following part of instruction No. 1:

"It is needless to say that the judgment of a court cannot be lightly set aside and that until they are lawfully set aside they are in full force and effect and binding upon all parties thereto. No appeal was taken by the defendant from the judgment of said court and the defendant is bound by said judgment of said court and must abide thereby unless under the proceedings had in this action which is now on trial it be determined by the jury that said plea of guilty was entered under such circumstances as to cause the same to be null and void and of no force and effect as further explained in these instructions. In other words, the state relies to a certain extent upon the judg-

ment of this court and the burden of setting aside said judgment and holding the same for naught, in this proceeding, is upon the said Oral Ray."

This is a civil proceeding and we think the instruction correctly states the law.

We discover nothing in instruction No. 4 which contradicts instruction No. 3 or which would, in our opinion, tend to confuse the jury as to the real issues.

The instructions charged that the appellant was a competent witness, and the jury must consider his testimony, but that they could take into consideration, as affecting his credibility, his interest in the result of the proceeding. In view of the character of the proceeding we do not think it can be said that this was prejudicial, although it did direct particular attention to the testimony of the appellant.

Finding no error in the proceedings, the judgment is affirmed.