## Elliott v. Commonwealth.
## Same v. Buchanan.

Dec. 18, 1942.

Zeb A. Stewart for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant. Attorney General, for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

These appeals are prosecuted by William Elliott from a judgment of the Whitley Circuit Court denying him a writ of coram nobis, and from a judgment of the Lyon Circuit Court refusing to grant him a writ of habeas corpus. By agreement the two appeals were heard together and both will be disposed of in this opinion.

Appellant and petitioner below, Elliott, was convict-

ed of murder in the Whitley Circuit Court and his punishment fixed at death. That judgment was affirmed on appeal and his petition for rehearing denied in 290 Ky. 502, 161 S. W. (2d) 633. Elliott then filed a petition in the United States District Court for the Western District of Kentucky for a writ of habeas corpus which was denied him by Hon. Shackleford Miller, Judge of that Court. Next, he filed a petition in equity without success in the Whitley Circuit Court asking a writ of coram nobis. He followed that by an application to this court for a temporary writ of coram nobis, in which he was likewise unsuccessful. The Judge of the Whitley Circuit Court having refused to stay Elliott's execution until he could perfect his appeal, and as the judgment did not grant an appeal, Elliott immediately took his appeal in this court, the clerk of which stayed his execution under Criminal Code of Practice, secs. 295 and 336. Whether or not the clerk had authority to do so in this character of action it is unnecessary to decide at this time since it was done and was favorable to petitioner.

Appellant's next move was to file his petition for a writ of habeas corpus before Hon. Ira D. Smith, Judge of the Lyon Circuit Court. The averments of this petition were confined with one exception, to alleging errors committed on his trial in the circuit court which were found to be without merit when the judgment was affirmed in 290 Ky. 502, 161 S. W. (2d) 633. The one exception contained in the petition was that since the trial and since the affirmance of that judgment it was discovered that several jurors by remarks made previous to and during the trial, unknown to appellant and to the circuit judge, show that they had prejudiced Elliott and were disqualified to sit in his case. Judge Smith refused to grant habeas corpus, dismissed the petition and granted Elliott an appeal.

This ruling was correct under the authority of Smith v. Buchanan, 291 Ky. 44, 163 S. W. (2d) 5, wherein it was held that habeas corpus does not lie to correct hidden errors which were unknown to the court and the defendant at the time the judgment was rendered, and that such remedy is available only when the judgment is void as shown in the record of the trial. The opinion in Smith v. Buchanan was rendered but a few months ago and it goes into the question thoroughly as to when a writ of habeas corpus will lie, hence it is unnecessary

to make further comment here on the subject. The judgment of the Lyon Circuit Court refusing habeas corpus is affirmed.

The petition seeking coram nobis filed in the Whitley Circuit Court contains practically the same averments as are in the petition filed in the Lyon Circuit Court asking a writ of habeas corpus. It is long and we will not attempt to ennumerate the twenty-eight grounds given for the basis of the writ of coram nobis. Many of them were repetitious, and as just stated above, all but one were raised on the appeal and the petition for rehearing and were disposed of in the opinion in 290 Ky. 502, 161 S. W. (2d) 633. The only averment in the petition which could sustain coram nobis is the alleged misconduct of four of the jurors, which was not discovered until after the expiration of the term at which the trial was had. This averment is to the effect that a juror, Gus Wells, said to Andrew Rowland before trial that he was on the jury panel and if he sat in the Elliott case, he would give him "the chair." Another juror, Gabe Thomas, is alleged to have made practically the same statement to Dave Patrick before the trial. When the jury was viewing the scene of the killing at the jail, the petition avers that Mila Adams, an aunt of Elliott, overheard two jurors, who were a little distance from the other members of that body and whose names she did not know, say that if they "would do to suit" the Commonwealth Attorney, they would get jury service and could earn money for the payment of taxes.

Elliott's execution was set for July 3, 1942, and upon filing his petition for a writ of coram nobis in the Whitley Circuit Court on June 27th, he obtained a temporary restraining order to stay his execution until his petition could be heard. The restraining order recited that on June 30th, Elliott would move Hon. Flem D. Sampson (Judge of both the Whitley and Knox Circuit Courts) at the courthouse in Knox County for a temporary injunction to stay his execution. On June 30th, attorneys representing the Commonwealth appeared at the appointed hour in the Knox County courthouse and moved Judge Sampson to dissolve the temporary restraining order; also they filed special and general demurrers to the petition, and without waiving same filed answer traversing the petition; and moved the court for a trial on merits.

As the petition for coram nobis was filed in the Whitley Circuit Court, Elliott's counsel objected to Judge Sampson assuming any jurisdiction over the case in the Knox Circuit Court except as to the matter of temporary injunction. The court overruled his objection and after hearing arguments on the demurrers, announced at noon that he would not rule on them, but at 1 o'clock P. M. he would hear the case on merits. Thereupon counsel for Elliott moved the court for a continuance and to order his client brough from the death house in the penitentiary so he could attend the trial. The court ruled this was an equity case and it was not necessary for the petitioner, Elliott, to be personally present. Counsel then moved for a continuance under Section 367a-5, Civil Code of Practice, which provides that an equity case shall stand for trial at the first term after the pleadings have been made up thirty days before the commencement of the term. This motion was overruled and counsel filed his affidavit for a continuance, averring in addition to the above matter that he had not been given sufficient time to prepare for trial on merits; that he did not have the original record of the case in court and that certain named witnesses were absent by whom he could prove the alleged disqualifying statements of the jurors, setting out what he could prove by such witnesses. The attorneys for the Commonwealth had a carbon copy of the original record, including affidavits of the absent witnesses, although the carbons of such were not signed, which the court ruled could be read; and he proceeded with the trial.

The writ of coram nobis is a very ancient common-law remedy the purpose of which we said in Sharpe v. Com., 284 Ky. 88, 143, S. W. (2d) 857, 858, in quoting from Jones v. Com., 269 Ky. 779, 108 S. W. (2d) 816, 817, lies only "to obtain a new trial because of conditions for which the applicant was in nowise responsible and which made the record in which the complained of judgment was rendered appear regular, proper, and in conformity with law, but which the real facts, as later presented on application for the writ, rendered the original trial tantamount to none at all, and when to enforce the judgment as rendered would be an absolute denial of justice and analogous to the taking of life or property without due process of law." The petition stated a cause of action in averring the alleged misconduct of the jurors and that it was not discovered until after the expiration of the term, but it remains to be seen if the proof

sustains those averments. Before entering upon that discussion, we shall take up the matter of procedure about which so much complaint is made.

The jurisdiction to try a petition for a writ of coram nobis is in the court that tried the indictment, Smith v. Buchanan, 291 Ky. 44, 163 S. W. (2d) 5, and the application should first be presented to the original trial judge, unless he is absent from the district or is incapacitated. Buckler v. State, 173 Miss. 350, 161 So. 683. As far as practicable the sufficiency of the proceeding will be tested by rules applicable to motions for new trial because of newly discovered evidence. Carman v. State, 208 Ind. 297, 196 N. E. 78; Swain v. State of Indiana, 306 U. S. 660, 59 S. Ct. 791, 83 L. Ed. 1057; Id., 215 Ind. 259, 18 N. E. (2d) 921. The rule excluding hearsay evidence is not so strict as in the original trial. Carman v. State, supra. The granting of the writ rests in the sound discretion of the trial judge. Washington v. State, 92 Fla. 740, 110 So. 259. We said in Sharpe v. Com., 284 Ky. 88, 143 S. W. (2d) 857, that the framers of the Criminal Code of Practice failed to provide any method by which a defendant after judgment had become final might apply for a new trial, and he was left to coram nobis which in effect has the same relation in obtaining a new trial in the criminal practice, when proper grounds are shown for that writ, as Sections 518 and 344 have in obtaining a new trial in the civil practice. These sections of the Civil Code of Practice provide such proceeding in summary.

The writ of coram nobis is issued in a summary proceeding, therefore it was entirely proper for the judge before whom the application for the writ was made to conduct the hearing in a county in his judicial district other than the one in which the petition was filed. It was unnecessary for notice to be given Elliott's counsel of this trial as required by Section 23.150, KRS (Section 964b-1, KS), as he was present in court for the purpose of moving the judge for a temporary injunction.

Although this petition was filed in equity, it should have been filed as an action at law. Smith v. Buchanan, 291 Ky. 44, 163, S. W. (2d) 5; Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A. L. R. 258. Therefore Section 367a-5 of the Civil Code of Practice has no application to the proceeding which is not one in equity but is at law, and it was not necessary to postpone this trial until

a term which did not begin until thirty days after the pleadings were made up.

This being a civil action, none of Elliott's constitutional rights were infringed when the court refused to order him brought from the death house to be present at the trial and in refusing to grant a continuance for that purpose. Carman v. State, 208 Ind. 297, 196 N. E. 78. He was awaiting execution in the Eddyville Prison some 300 miles from the place of this trial, which was more or less a technical proceeding, and it was not shown he could have been of any assistance to his counsel or that he was acquainted with the alleged misconduct of the jurors.

It cannot be denied that the trial judge erred in forcing a trial of this proceeding on such short notice and in not granting an appeal and in not staying Elliott's execution until an appeal could be perfected. But the question confronting this court is, was Elliott prejudiced thereby? His attorney immediately sued out an appeal here and his execution has been postponed during this appeal. The trial was before the judge and all of Elliott's proof in the form of affidavits was gotten before the court, and such a proceeding may be heard on affidavits, People v. Block, 134 Cal. App. 217, 25 P. (2d) 242.

The affidavit of R. C. Browning, the attorney who defended Elliott on the murder trial, was read and it contained what Dave Patrick (now dead) was alleged to have told Mr. Browning as to what the juror Gabe Thomas told Patrick before the trial, to-wit: If he (Thomas) was selected as a juror, he would give Elliott a death sentence. In his testimony Thomas denied making any such statement; that he did not prejudice the case; and that he and Wells were the last two jurors to agree to the verdict.

The substance of Andrew Rowland's affidavit was that Wells told him before the trial that if selected as a juror he would vote for a death penalty. In his testimony Wells denied making any such statement and said he told Rowland that he had voted for a death sentence in the Smiddy case, Smiddy v. Cmmonwealth, 287 Ky. 276, 152 S. W. (2d) 949, and that when the law and the evidence justified it, he could inflict the supreme penalty. According to Wells the conversation arose in a talk con-

cerning jury service generally and was made in reply to Rowland's statement that he could not inflict capital punishment; that the Elliott case was not mentioned by either of them; that he did not know Elliott and had no feeling against him.

The affidavit of Mila Adams, an aunt of Elliott, stated that while in the ladies' rest room at the jail, she overheard a conversation between two members of the jury to the effect that they must do as the Commonwealth Attorney desired in order to obtain the privilege of serving on juries and earning money with which to pay their taxes. She was present at the trial and testified in person for the petitioner but was not interrogated on this subject. All her testimony on direct examination related to whether or not Elliott was sane. On cross-examination she was questioned on the averments of her affidavit and she could not give the names of the two jurors whose alleged conversation she overheard. The Commonwealth introduced several witnesses showing that the jury were not in that part of the jail where this witness placed them; that none of the members were apart from that body; that no such conversation occurred; and that the trial judge was with the jury while it was at the jail.

It is significant that when Mila Adams was put on the stand the attorney representing Elliott did not examine her as to what her affidavit averred transpired between the two jurors at the jail. This fortifies us in our conclusion that the affidavits of petitioner's witnesses were just as efficacious, if not more so, than his witnesses would have been had they personally appeared and testified. The burden was upon petitioner to show by a preponderance of the evidence and by strong and convincing proof, the misconduct of the jurors of which he complains. 24 C. J. S. 156 Sec. 1606(8); People v. Crooks, 326 Ill. 266, 157 N. E. 218; People v. Deutch, 16 Cal. App. (2d) 121, 60 P. (2d) 155. This he failed to do.

While we cannot approve the speed with which the trial judge heard this case, we think his feelings must have been much the same as those of Judge Griffith, who in writing the opinion of Mitchell v. State, 179 Miss. 814, 176 So. 743, 744, 121 A. L. R. 258, said for the Supreme Court of Mississippi relative to petitions for coram nobis:

"[They] have induced a course of practice in cases of death sentences which, under the experiences of the last few years, has become intolerable, and has produced such mischief as to bring the courts and the law into a measure of disrespect, in the hearing of numerous applications for the stay of executions and in the too frequent granting thereof. * * * We have reached the point where it becomes the solemn obligation of this court to close some doors to the field by which judgments of conviction with death sentences may be made footballs, to be tossed from court to court, and from one delay to another."

Perceiving no error in the record which in our opinion prejudices the substantial rights of the petitioner, the judgment is affirmed.

Whole Court sitting.