STATE OF MONTANA, Plaintiff and Respondent, *v.* JAMES R. ZUMWALT, Defendant and Appellant.

No. 9345.

Submitted January 17, 1955. Decided December 8, 1955.

291 Pac. (2d) 257.

530

Myles J. Thomas, Helena, for appellant.

Arnold H. Olsen, Atty. Gen., C. W. Leaphart, Jr., Asst. Atty. Gen., Jay M. Kurtz, County Atty., Missoula, for respondent.

Mr. Thomas, Mr. Kurtz and Mr. Leaphart argued orally.

MR. JUSTICE DAVIS:

On July 1, 1952, the district court for Missoula County, Honorable C. E. Comer, Judge, sentenced the relator Zumwalt to seven years in the Montana State Prison upon his plea of guilty to an information, which assumed at least to charge the crime of "Passing a False and Worthless Check," a felony. Subsequently a hearing, which began on January 6, 1953, or thereabouts, and continued intermittently for some two weeks, was had in the district court upon a proceeding initiated by Zum-

walt in the nature of the common law writ of error *coram nobis* to inquire into certain errors alleged by him to have occurred in the course of his prosecution there. Because of these errors it was urged the judgment of conviction should be set aside. Evidently the court below concluded otherwise, because after the hearing had, at which Zumwalt was present in person and represented by counsel, the writ was by judgment or order of date January 30, 1953, denied.

No appeal was taken or attempted, so far as this record shows, from this disposition of the case in the lower court. Rather on December 1, 1954, Zumwalt sued his writ out of this court upon the grounds, in brief, that his application or motion in the district court had been improperly denied, that he had in fact been deprived of his constitutional rights in the course of the prosecution, which resulted in his sentence below and consequent imprisonment, and that the judgment of conviction against him had been arbitrarily and unjustly entered under the wrong statute. He prayed our review.

Accordingly an alternative writ went down, commanding the respondents to show cause at a time specified why the challenged judgment "should not be set aside, vacated and annulled and the said relator James R. Zumwalt be again arraigned on said information."

To this writ the respondent court and judge have made return in no manner known to our law; but they are undoubtedly to be excused, because our writ is in itself not only novel but unknown to our practice or procedure heretofore. Yet in the view which we take of the matter the return before us, such as it is, is not material. The attorney general has interposed to the writ a motion to quash; to the petition, a demurrer; both on the ground among others that this court is without jurisdiction in the matter. His convincing brief leaves no other conclusion possible. We may not therefore reach the merits of the case with which the district court was concerned and upon which the dissent in this court touches.

Initially we note that it is not of importance whether the

proceeding in the district court be denominated a motion, a petition for a writ of error *coram nobis,* or by some other equally mysterious title. For it ended in (1) an order or (2) a final judgment denying Zumwalt the relief he asked.

Nor is it here of importance either whether the proceeding below be construed (a) as a civil action brought after the fashion of the common law writ of error *coram nobis* to annul the challenged judgment of conviction, People v. Dabbs, 372 Ill. 160, 165, 166, 23 N.E. (2d) 343; Quinn v. State, 209 Ind. 316, 319, 198 N.E. 70; State v. Ray, 111 Kan. 350, 351, 207 Pac. 192; Newcomb v. State, 129 Neb. 69, 73, 74, 261 N.W. 348; Carman v. State, 208 Ind. 297, 311, 196 N.E. 78; Elliott v. Commonwealth, 292 Ky. 614, 620, 167 S.W. (2d) 703; Jones v. Dowd, 7 Cir., 128 F. (2d) 331, 333; Jones v. Squier, 9 Cir., 195 F. (2d) 179, 180, or (b) as a motion made in the criminal case itself to vacate that judgment, In re Paiva, 31 Cal. (2d) 503, 509, 510, 190 Pac. (2d) 604.

In either case the judgment or order entered might have been brought here by appeal for review consistent with our controlling statutes.

That is, if the denial below of Zumwalt's prayer for relief be a final judgment in a civil action or special proceeding commenced in the district court, then by statute, R.C.M. 1947, section 93-8003, subd. 1, he was given his appeal to this court within six months after the entry of that judgment, R.C.M. 1947, section 93-8004, subd. 1. On the other hand, if the rule below be an order, then Zumwalt had his appeal likewise to this court as from an order made after judgment of conviction in the criminal case which affected his substantial rights, R.C.M. 1947, section 94-8103, subd. 3, to be taken by him within sixty days, R. C.M. 1947, section 94-8105. The remedy by appeal given here was both direct and adequate. There is accordingly neither need nor excuse for resort to the extraordinary writ now before us.

But the inquiry, which confronts us, reaches further than any question of the adequacy or inadequacy of Zumwalt's remedy

by appeal. The question really for decision is rightly put by the attorney general: Do we have jurisdiction in this proceeding to review the action of the respondent court and judge?

The answer returned by the attorney general is as conclusive as his argument is sound.

The writ issued by this court in this proceeding, whatever its name, is revisory in its purpose and appellate in its command; as much was conceded at the bar upon the oral argument.

Our power then to take appellate jurisdiction and review the case brought here pursuant to that writ stems from the Constitution of this state, Art. VIII, sections 1, 2, 3 and 15; or we do not have that power at all. Yet the grant there to us of appellate jurisdiction is in every instance circumscribed by the mandate as well as the prohibition of our Constitution, Mont. Const., Art. III, section 29, that it be exercised "under such regulations and limitations as may be prescribed by law", Art. VIII, section 2, or "subject, however, to such limitations and regulations as may be prescribed by law", Art. VIII, section 3, or "under such regulations as may be prescribed by law", Art. VIII, section 15.

In State ex rel. Clark and Owens v. District Court, 128 Mont. 526, 278 Pac. (2d) 1000, 1001, and as recently as January 20, 1955, we adhered to the rule in a civil case that the party aggrieved who would appeal must comply with the statutes which limit as well as regulate his right of appeal to this court. Otherwise we said he would not be heard here. The following excerpt from our opinion in that case is peculiarly pertinent to Zumwalt's appeal now before us: "The right of appeal though guaranteed under the Constitution may be exercised only in obedience to the statutory regulations applicable."

Neither Zumwalt nor his lawyer obeyed in any particular the statutes of this state by which the legislature has constitutionally defined the limits of his right to appeal to this court for the review he asks of us.

In the Owens case our opinion continued: "Under the written law contained in the Constitution and statutes of Montana

534

the defendants may not ignore and by-pass the statutes governing appeals and, in the absence of the taking of any appeal and by merely petitioning therefor, invest the supreme court with the requisite jurisdiction to review, set aside and annul District Judge Fall's order refusing to dissolve the attachment so issued out of the district court.''

In the instant case, although the petitioner Zumwalt was present in person at the hearing in the district court, and was there represented by counsel, no appeal was taken or attempted consistent with our Constitution and Code of Criminal Procedure from the court's order or judgment with which that hearing was closed. This we emphasize; for as we ruled in the Owens case jurisdiction of an appeal can not be vested in this court merely by filing a petition with us. We take jurisdiction in the case of a criminal appeal only in obedience to the applicable statutes which define and limit both our jurisdiction and the defendant's right to be heard.

It may be that where the legislature has not spelled out the regulations and limitations, which are to bound our jurisdiction, we may act consistent with our own concept of the authority given this court by the Constitution. See State ex rel. Whiteside v. District Court, 24 Mont. 539, 563-564, 63 Pac. 395; State ex rel. Regis v. District Court, 102 Mont. 74, 77, 55 Pac. (2d) 1295. It is undoubtedly true also that if the case is exigent, this court may act to meet the emergency, even though the legislature has prescribed regulations adequate to review the ordinary case by appeal, i.e., by framing and issuing its own original writ to fit the case. State ex rel. Whiteside v. District Court, supra, 24 Mont. at pages 562, 563, 63 Pac. at pages 339, 340. With these rules there is no quarrel.

Were we shown that Zumwalt's case was exigent as for example that although innocent of any crime he was nevertheless arbitrarily sentenced and wrongfully imprisoned under that sentence, as is the suggestion made in the dissenting opinion of Mr. Justice Bottomly, and if then the existing remedies by appeal as prescribed by our statutes and as well the usual writs

to which this court customarily turns to prevent an injustice were found in truth inadequate, certainly we would not hesitate consistent with State ex rel. Whiteside v. District Court, supra, to design a further remedial writ out of this court that we might meet the emergency and attain the ends of justice, otherwise denied.

We think, however, we have no such case here. The suggestion that Zumwalt has committed no crime is in our view wholly erroneous. If we are to inquire into the purpose of the latter part of section 94-2702, R.C.M. 1947, with which the dissenting opinion concerns itself, it is our opinion that this statute has to do only with the evidence which is sufficient to make out a prima facie case of intent to defraud. Again, if we are to consider the record of the proceedings had in the trial court, which is now before us, it is clear that Zumwalt's intent to defraud was not seriously denied even by him. The drawee, it is true, to whom Zumwalt gave his worthless check did not in the end suffer any financial loss. But this fortunate result of Zumwalt's scheming was not due to the absence of any intent in him to defraud. His guilt is not diminished because of the vigilance which his intended victim exercised to avoid the loss undoubtedly designed.

Grant that Zumwalt was intoxicated when he committed the crime for which he is now imprisoned. Nonetheless the uncontroverted fact is that his intoxication was the result of his own voluntary act. We may safely assume here and in all truth that this condition was not brought about by others against his will and without his consent. In short, intoxication is not involuntary; and on this record Zumwalt's offense was neither mitigated nor excused thereby. Compare R.C.M. 1947, section 94-119, subd. 1; State v. Laughlin, 105 Mont. 490, 494, 74 Pac. (2d) 718.

Likewise it can hardly be denied that Zumwalt voluntarily committed the other crimes, for which he has previously served sentences in Wyoming, Oregon, Washington and Nevada. In passing we note at this point not only the right, but the duty

also, of the district court, upon Zumwalt's plea of guilty, to inquire into this record which he alone of his own deliberate choice had made. The judge who imposed sentence upon him would have been remiss in the discharge of his judicial duties, if he had not made the detailed inquiry which disclosed Zumwalt's record, and if he had not accordingly given weight to that record in imposing the sentence he did.

It seems that Zumwalt saw service during World War II in the United States Marine Corps as the dissenting opinion points out, and that while in that service he contracted a disease for which he was sent home. Here again however we find no excuse in law or in fact for his criminal conduct. Witness the thousands who served with him overseas and were wounded or diseased in that service, but who today are found among us civilians without moral blemish. Indeed Zumwalt himself puts his case in an entirely different light from that cast by the dissenting opinion; for upon inquiry made of him he conceded his discharge as a United States Marine was because of "bad conduct", and nothing else.

In short we see no justification for interfering with the sentence pronounced by the district court. That sentence appears to us to be neither arbitrary nor the result of a miscarriage of justice. It seems severe in the circumstances which the record discloses; but again that sentence is within the limits which the law fixes for the offense here. It is also within the limits of the discretion given the district court. If it is unduly severe, there is provision in our law for relief by application to our state board of pardons. It is to the sympathetic ear of that agency of our state government that Zumwalt and his counsel should address their plea.

For where, as is the case at bar, the legislature has given the aggrieved party a complete and efficient remedy by appeal, a remedy easily invoked, entirely adequate, and well understood by bench and bar, this court has no jurisdiction under our Constitution to override the plain command of the statutes enacted for our guidance and to the very contrary of their un-

mistakable intent invent an original writ, a true *nullius filius* of the law, that we may undertake a review where we have no right to review at all. We are commanded by our Constitution in common with the executive and legislative branches of our state government to observe the limitations and regulations laid down for us by law. We are forbidden to proceed otherwise.

Here we should remember what Mr. Chief Justice Brantly said for a unanimous court in State ex rel. Whiteside v. District Court, supra, 24 Mont. at page 562, 63 Pac. at page 400:

"'* * * As the appellate jurisdiction [of the Supreme Court] was granted for the purpose of revision and correction, and the original jurisdiction under these writs [habeas corpus, mandamus, quo warranto, certiorari, prohibition and injunction] was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was *designed to infringe upon the functions of neither. * *''* Emphasis supplied. Compare State ex rel Regis v. District Court, supra.

An extended citation of authority is not called for. Compare State ex. rel. Clark and Owens v. District Court, 128 Mont. 526, 278 Pac. (2d) 1000; State v. Bosch, 125 Mont. 566, 588, 589, 242 Pac. (2d) 477; City of Bozeman v. Nelson, 73 Mont. 147, 162, 163, 237 Pac. 528; State ex rel. Treat v. District Court, 124 Mont. 234, 221 Pac. (2d) 436; 24 C.J.S., Criminal Law, section 1628, page 212 and section 1701, page 379; 17 C.J., Criminal Law, section 3262, pages 14, 15, and section 3356, page 93; 4 C.J.S., Appeal and Error, section 18, page 85, and section 425, page 881; 3 C.J., Appeal and Error, section 3, pages 299, 300, and sections 1031, 1032, pages 1039, 1040; 2 Am. Jur., Appeal and Error, section 5, page 845.

The motion to quash and the demurrer interposed to the writ and the petition, respectively, are sustained, the proceeding is dismissed.

MR. JUSTICES ANGSTMAN and ANDERSON, concur.

MR. CHIEF JUSTICE ADAIR:

I dissent.

In 18 C.J.S. at page 281 it is said:

"*Coram nobis*. Literally 'Before us ourselves, (the king, i. e., in the king's or queen's bench).' The name given to a writ of ancient origin, the writ of error on judgments of the court of king's (or queen's) bench, so called from that clause in the old forms which described the record and process as remaining 'before us' (quae coram nobis resident) that being the style of the court; also applied to writs of error directed to another branch of the same court, for example, from the full bench to the court at nisi prius; and distinguished from 'coram vobis.'
\* \* \*

"*Coram vobis*. Literally 'Before you.' The name given to a writ of ancient origin, a writ of error directed by a court of review to the court which tried the cause, to correct an error in fact, and distinguished from 'coram nobis' see supra."

That such writs are neither novel, mysterious nor unknown to our practice or procedure see: State v. Hales, 124 Mont. 614-616, 230 Pac. (2d) 960; State ex rel. Zumwalt v. District Court, 127 Mont. 607, 258 Pac. (2d) 749.

MR. JUSTICE BOTTOMLY:

I dissent.

The relator, James R. Zumwalt, filed in this court his petition for an appropriate writ to inquire into the lawfulness of his incarceration in the state prison. The writ was granted and a hearing had before this court.

The facts are simple.

The relator served overseas in the United States Marine Corps 23 months. There he contracted elephantiasis and was returned to the United States for treatment for the disease.

On June 24, 1952, relator arrived by bus in Missoula, Montana, from Spokane, Washington. He was in an intoxicated condition

when he boarded the bus in Spokane and when he reached Missoula. He had a bus ticket, destination Butte, Montana, where he expected to go to work in the mines.

While the bus tarried in Missoula for the lunch stop, relator proceeded to a bar where he took on more drinks and the bus then left without him. That same afternoon, while noticeably under the influence of liquor, he proceeded to Cecil's Shop, an exclusive women's dress shop, where he dickered for some time for a woman's hat and dress for which he tendered a partially made out bank check on a Spokane bank signed by himself as payer and payable to the order of himself as payee but bearing neither date nor amount. These omitted details the eager dress shop employee obligingly wrote in and supplied on the check and then accepted same in payment for a woman's hat and dress for the combined total retail price of $51 and handed relator $14 difference in cash.

An hour or so later, on complaint of the manager of Cecil's Shop, the relator, still plainly intoxicated, was arrested and taken into justice court.

Two days later, to-wit, on June 26, 1952, the county attorney of Missoula County, on filing in the district court an information against the relator Zumwalt, stated to that court that Zumwalt had theretofore been arrested and arraigned in justice court charged with a felony, entered a plea of guilty and that he was then bound over to the district court.

At the same time, to-wit, on June 26, 1952, Zumwalt was taken before the district court where, without an attorney to represent him, he was handed a copy of the information so filed, the charging part whereof reads:

"That at the County of Missoula, State of Montana, on or about the 24th day of June, A. D. 1952, and before the filing of this Information, the said defendant then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously pass a false and worthless check to Cecil's Shop in the Hammond Arcade in the City of Missoula, in words and figures as follows:

"'16 No. 4# 28-70

1251

Spokane, Washington, June 24, 1952
Pay to the Order of James R. Zumwalt....................................$65.00
Sixtyfive...........................................................................................no dollars
First Avenue Branch
The Old National Bank of Spokane
Spokane, Washington

/s/ Mr. James R. Zumwalt
421 Oak St.'

"said check being passed on or about the 24th day of June, 1952 and that for said check the defendant received cash and merchandise in the amount of $65.00; that on said date the defendant had no account in said bank and that said check was passed with the intent in him, the said defendant, to defraud the complainant thereof, all of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana."

At his initial appearance therein the district court inquired of relator if he had a lawyer, to which relator replied in the negative and stated further that he had no means with which to employ counsel and that he would plead guilty. The court then informed relator that it was its duty under the laws of this state to advise relator he was entitled to a lawyer if he desired one.

The court then continued the matter until the next morning, June 27, 1952, at 9:30 o'clock a.m. At which time the relator stated to the court that he did not desire a lawyer and that he was then ready to enter his plea. The court thereupon read to the relator the charge against him as set forth in the information, and informed the relator that the charge against him, if he was found guilty, was punishable by imprisonment for not less than one nor more than fourteen years under R.C.M. 1947, section 94-2007, and in relator's presence inquired of the county attorney if that was not also his view, to which the county at-

torney replied, "Yes, it is, your honor." The court also informed the relator that relator had advised the court he had been in the penitentiary about six years all together, so there could be in this case no suspended sentence; that under the law relator's sentence must be a term in the state penitentiary of this state. Thereupon relator, without counsel, pleaded guilty to the purported crime charged against him in the information and the court then set a time for pronouncing sentence.

On July 1, 1952, the relator, again without counsel, was brought before the court for the passing of sentence at which time the court again reviewed all of relator's life history and transgressions which had been gleaned from his interrogation of the relator reciting prior convictions, none of which had been pleaded in the information filed and none of which had been proven other than by the unwarranted questioning of the relator who stood before him without counsel. Thereupon the court pronounced sentence as follows:

"The Court: Your sentence is seven years imprisonment in the State Penitentiary of this state at hard labor as provided by law for the crime you have committed, and as to which you plead guilty.

"You are remanded to the custody of the Sheriff with directions to deliver you to the Warden of the State Penitentiary."

I presume the district judge and the majority of this court presumed that the State of Montana had a penitentiary in which the relator was to be incarcerated. However our statutes do not designate any such institution. I suppose it is presumed again that they had in mind another institution which our statutes designate as the "State Prison".

I suppose it is proper to base our opinion on presumptions as the majority opinion "assumed" that the information filed herein charges the crime of " 'passing a False and Worthless Check' " a felony.

It is apparent from the record that the district court adjudged and sentenced relator to a term of seven years at hard labor in the "state penitentiary" under R.C.M. 1947, section 94-2007.

542

Let us examine R.C.M. 1947, section 94-2007, to see if it was in any particular applicable to this purported offense. This section, as far as applicable here, is as follows: ''Every person who makes, passes, utters, * * with intention to defraud any other person, or who, with like intention, attempts to pass, utter, or publish any *fictitious * * check, purporting to be the * * * check, * * * for the payment of money * * of some bank, corporation, co-partnership, government, or individual in existence, when in fact there is no such bank, corporation, co-partnership, government, or individual in existence,* knowing the * * * check * * * to be fictitious, is punishable by imprisonment in the state prison for not less than one or more than fourteen years.''

Analyzing the said foregoing Section 94-2007, we find the gravamen or charge therein imposes a penalty only on the person who passes, with intent to defraud, a fictitious check of some *non-existent* bank, corporation, co-partnership, government or individual, *knowing the check to be fictitious* and knowing there was not such *entity* or *individual in existence.* The information does not state a violation of Section 94-2007, supra, under which relator was sentenced.

Of course there is nothing fictitious nor non-existent about the check. The Old National Bank of Spokane is a well known banking institution, having been established for many years. There is nothing fictitious about the signature of Mr. James R. Zumwalt.

The mere reading of the information and the record in this case shows crystal clear that there is no charge in the information nor is there any fact or evidence in the record that in any way could bring the relator under a charge of violating Section 94-2007. The sentence and judgment rendered under said Section 94-2007, supra, was and is wholly void. See State v. Jensen, 103 Utah 478, 136 Pac. (2d) 949; Ex parte Garbarini, 129 Cal. App. 618, 19 Pac. (2d) 27; People v. Eppinger, 105 Cal. 36, 38 Pac. 538.

The great Chief Justice Marshall stated that due process

of law is process due according to the law of the land and that this government is a government of laws and not of men. It is clear that the law will cease to deserve such high appellation if it furnish no remedy for the denial of one's legal rights.

However the attorney general argues the court may have sentenced the relator Zumwalt under R.C.M. 1947, section 94-2702, but the short answer to that contention is that the court did not sentence relator thereunder. The record speaks for itself. But conceding, for argument's sake, that the court attempted to impose and render sentence and judgment under said Section 94-2702, then let us examine that section.

Section 94-2702, as far as pertinent here, is as follows: "Any person who, with intent to defraud, shall make * * * or deliver any check, * * * for the payment of money, upon any bank * * * knowing at the time of such making, * * * or delivering that the maker or drawer has not sufficient funds in or credit with such bank * * * for the payment of such check, * * * if said check * * * is for more than fifty dollars, shall be deemed a felony and punished as provided for in section 94-2706, for grand larceny. In any prosecution under this section as against the maker, or drawer thereof, the making, uttering, or delivering of a check * * * *payment of which is refused by the drawee because of lack of funds or credit,* shall be prima facie evidence of intent to defraud * * * *provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, within five days after receiving notice that such check,* * * * has not been paid by the drawee." Emphasis supplied.

It is shown without dispute that this relator, James R. Zumwalt, was in an intoxicated condition when he is alleged to have passed the check and that, notwithstanding, the clerk at Cecil's Shop wrote in the date on the check and otherwise completed it. The check itself is made to relator and signed by relator. The record does not show any endorsement thereon, and it is conceded that the check was never presented for payment. From the face of the check itself it is debatable whether even a civil action could be maintained against the maker for the pay-

ment thereof. It will be noted the check in the written part thereof provides for the payment of "no dollars". The last written part of a check takes precedence over the figures used, and the check carried no endorsement. But laying all that argument aside, here, in this case, within an hour or two after the purported check had been received by Cecil's Shop, the relator was arrested without the check being first presented for payment, and the woman's hat and dress and the $14 balance in money taken from the relator, James R. Zumwalt, and the police returned and delivered to Cecil's Shop the hat, dress and $14 so that the complainant, Cecil's Shop, was made whole, suffering no loss whatever. The relator, James R. Zumwalt, was thus brought squarely within the "exception" in the above Section 94-2702.

It should be borne in mind that by a special amendment to the statutory law of this state our legislature, by the enactment of Chapter 63, Laws of 1919, specifically wrote into the statute, now R.C.M. 1947, section 94-2702, the above-mentioned proviso and exception. The will and specific intent of the legislature so written into the law of this state should be given effect and applied in relator's case. The undisputed facts are that relator did not and has not violated the statutes on which the district court, the county attorney and the state rely and base their case.

We must make good our boast that we, here in the United States of America, live under a government of laws and not of men, and for every wrong there must be a method and process for righting the wrong, and such is provided by the Bill of Rights in both our state and federal constitutions which together with the statutes, state and federal, constitute the "law of the land".

This relator here has plainly shown to this court that the sentence imposed upon him, and the judgment rendered against him were and are illegal and void, being rendered without a lawful, statutory charge being presented, filed or established against him and therefore without authority of law.

It is true, this relator had a right of appeal to this court

from such purported judgment, but such right is only idle and wishful thinking for a person without competent counsel, financial means or friends, incarcerated in prison, and without legal knowledge of the technical and prompt action required and absolutely necessary to perfect an appeal. Because such an injustice has been done, and an illegal judgment rendered, no issue under law was ever formed. Must the prisoner continue on in prison without relief from the injustice? Is this court to sanction such a practice? Is this court to deny this relator his constitutional and statutory rights so clearly shown to exist here? Whether his application is denominated a writ of *coram nobis* or *habeas corpus,* or other remedial writ, is of little consequence. We should look to substance and not to form. He is here demanding his liberty and relief from a void judgment.

The majority opinion holds in substance that this court has no jurisdiction in this matter, asserting that the legislature has failed to expressly grant to this court the power or authority to hear and determine an application for the ancient English common law writ of error *coram nobis.* This writ ought to be used upon occasion where the law has established no specific remedy and where in justice and good government there ought to be one.

However in my opinion the legislature has clearly and adequately provided for this very contingency. In the enactment of R.C.M. 1947, section 12-103, the legislature declares that, "The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States, or the constitution or laws of this state, or of the codes, is the rule of decision in all the courts of this state." See also the last part of R.C.M. 1947, section 12-104.

Section 3 of Article VIII of our Constitution in mandatory language declares, as far as pertinent here. that, "The appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law. Said court shall have power in its discretion to issue and to hear and determine writs

of habeas corpus, mandamus, quo-warranto, certiorari, prohibition and injunction, *and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction."* Emphasis supplied.

Then the legislature, to implement and make effective the foregoing constitutional provision, enacted R.C.M. 1947, section 93-214, as follows: "Original jurisdiction. In the exercise of its original jurisdiction the supreme court has power to issue writs of mandamus, certiorari, prohibition, injunction, and habeas corpus; *also has power to issue all other writs necessary and proper to the complete exercise of its appellate jurisdiction."* Emphasis supplied.

Our legislature has further provided by R.C.M. 1947, section 93-1106, that "When jurisdiction is, by the constitution or this code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

The provisions of our statutes and the proceedings under them are to be liberally construed with a view to effect their objects and to promote justice.

The attorney general vigorously argues that, inasmuch as no appeal was taken from the judgment, the constitutional and statutory provisions do not apply, and the majority opinion so holds. Of course this is not the law. It is not necessary to appeal from a judgment before making an original application to this court for a writ of *habeas corpus,* or for a writ of *coram nobis* as is provided in the above provisions of our Codes and Constitution. The phrase "other original and remedial writs" includes of course the prerogative common law writs.

The foregoing demonstrates the lack of merit in the contention that this court has no jurisdiction in this particular case.

The attorney general anticipates and recognizes both the vice and the weakness in the position taken by him in this proceed-

ing, stating it might be urged the information fails to charge notice or knowledge on the part of relator of his lack of sufficient funds or to charge that the check was ever presented to the bank on which it was made. The attorney general further asserts it is not necessary for Cecil's Shop, which accepted the unendorsed check, to have suffered any financial loss in the transaction. The attorney general further stated that the question might also here arise that the five-day period expressly allowed by statute for honoring the check must be satisfied, and contended that if the check was paid the state would necessarily be forced to resort to independent evidence to establish fraudulent intent on the part of relator, citing certain California cases in support of his above contentions. The attorney general is to be congratulated in so frankly and honestly pointing out to this court in this original proceeding the glaring, but nonetheless essential and jurisdictional defects of the "information" so filed against the relator and in the proceedings through which he was tried, convicted and sentenced. The one important matter on which the attorney general failed to comment and which the majority of this court has overlooked is that California does not have a statute like or even similar to our Section 94-2702 of the Revised Codes of 1947. It follows that the cited decisions from California are not in point nor are they here applicable. This relator may not lawfully be convicted and sentenced under authority of the California decisions.

Our Section 94-2702, supra, appears to be a unique law, yet it clearly expresses the intent of our legislature. It is the law of Montana and should be the rule for all our courts. Our Constitution and statutes apply with equal force to all people regardless of their race, creed or color, and it matters not that the accused person may be the most despicable of humans or that he be a more fortunate and favored citizen. As was said by the eminent Judge Cuthbert Pound in more concise and succinct language, "although the relator may be the worst of men * * * the rights of the best of men are secure

only as the rights of the vilest and most abhorrent are protected.''

James R. Zumwalt, the relator, could not, under the law, plead guilty to an offense with which he was never charged. It should be remembered that the same power that punishes also makes the law that protects. The fundamental law says that an accused shall not ''be deprived of * * * liberty * * * without due process of law.'' Const., Art. III, section 27; State v. Allison, 116 Mont. 352, at page 366, 153 Pac. (2d) 141.

''Equal and exact justice to all men * * * freedom of religion, freedom of the press, freedom of person under the protection of the habeas corpus; and a fair trial by juries impartially selected, these principles form the bright constellation which has gone before us.'' So spoke Thomas Jefferson concerning the Bill of Rights, which is our heritage and the foundation of our unique American tradition that every person, charged with the commission of a public offense, shall be accorded a fair and impartial trial. So it is no person can be lawfully prosecuted and sentenced for an offense neither charged nor proven, nor after his unlawful and unauthorized commitment may he be lawfully held in prison on a wholly void judgment entered against him. The fact remains however that this unfortunate relator has been held for a long time and continues to be held in the state prison at hard labor under an illegal and void commitment.

The sentence imposed and judgment pronounced and entered herein by the district court, being void, I would deny the motion to quash the writ, overrule the demurrer to the petition and writ and order the purported sentence and judgment set aside, vacated and annulled and the information dismissed.